**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-16-00645-CR

_____

**EDWIN EUGENE VERNON, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 14CR2726**

---

## O P I N I O N

A jury convicted appellant Edwin Eugene Vernon, Jr. of indecency with a child, and the trial court sentenced him to 12 years in prison. *See* TEX. PENAL CODE § 21.11. On appeal, he challenges the sufficiency of the evidence to support his conviction, and he claims that his lawyer rendered ineffective assistance. He also

suggests other errors that were not preserved at the trial: prosecutorial misconduct that denied him a fair trial and a jury charge that failed to require a unanimous verdict.

We conclude that the complainant's testimony established the elements of the offense and was sufficient to support Vernon's conviction. The record includes no evidence to explain trial counsel's actions which have been challenged on appeal, and thus her performance has not been shown to be constitutionally deficient. Finally, no egregious error has been shown based on the prosecutor's conduct or the jury charge. Accordingly, we affirm.

### Background

To protect the complainant's identity, we use the same alias used in the State's appellate brief. More generally, this opinion has been written deliberately to avoid, to the extent possible, unnecessarily revealing the identities of other witnesses involved in sexual encounters with the appellant.

At the age of ten, complainant "Amanda" confided in her younger cousin that she had been sexually abused by appellant Edwin Eugene Vernon, Jr. Amanda's aunt, T.K., was planning to take the two girls to visit the home of some relatives, where Vernon also lived. Amanda was "scared . . . that something would happen" because Vernon previously had touched her in a sexually inappropriate way. T.K. subsequently spoke with Amanda about what Vernon had done. Amanda

2

reported that Vernon had called her his "dirty little slut" while touching her "breasts, bottom, and her privates."

T.K. called the police. Following an investigation, a grand jury indicted Vernon for indecency with a child. The indictment alleged that Vernon "intentionally or knowingly" touched the genitals of Amanda, a child under 17 years of age, "with the intent to arouse or gratify [his] sexual desire."

Deputy M. Hunt testified at trial. He had responded to T.K.'s home on the day she learned about what Vernon had done to her niece. T.K. told Deputy Hunt about Amanda's outcry. Deputy Hunt saw Amanda at the home and observed that she was "upset and crying." He did not speak with Amanda that day, but based on the information he received from T.K., he contacted the Criminal Investigation Division's on-call detective, Detective G. Hayes.

Detective Hayes contacted Amanda's father to schedule a forensic interview of the child. He also personally interviewed T.K. as an outcry witness. Detective Hayes contacted several possible witnesses, and he interviewed Amanda's grandmother and another family member. Finally, Detective Hayes interviewed Vernon, who did not admit to any wrongdoing.

C. McCarty, a forensic interviewer for the Child Advocacy Center of Galveston County, interviewed Amanda. McCarty testified that Amanda was able to answer all the questions asked of her during the interview.

3

At trial, Amanda testified that Vernon had touched her "probably" more than 20 times over the course of seven years. Vernon had last touched her just a few days before her outcry, while she was at his home. He started "tickling" her, then he touched her "top" area and her "private" area under her clothes. Vernon also asked her if she wanted to be his "little slut." Amanda did not respond to Vernon because she was "confused" and "didn't know what to say." She also was "scared" because no one else was there and she "didn't know what was going to happen."

The defense called several witnesses at trial, including Deputy Hunt and Detective Hayes, Vernon's girlfriend, and several of his relatives. Vernon's mother and girlfriend each testified that they had not seen him alone with any child during family gatherings, and that they had never seen him touch any child in an inappropriate way. Another relative also testified that she had never seen Vernon alone with any children, including Amanda, in the past ten to fifteen years. She had heard Vernon call his girlfriend his "dirty little slut" in front of the children and she told him that he "shouldn't say that around young ears."

Vernon also testified in his own defense. He stated that he had never been alone with the children. He explained that he "would never allow" himself to be alone with children and that he "tried to protect" himself because he feared "stuff like this happening." Vernon admitted that he had tickled Amanda's shoulders and knees, but he insisted that he had never touched or tickled her on her breasts,

4

buttocks, or private parts. He testified that he would jokingly call his girlfriend his "dirty little slut," and that he might have inadvertently said it in earshot of the children, but he denied ever using the term with Amanda or any of his cousins, nieces or nephew, or with his neighbors.

The jury found Vernon guilty of indecency with a child, and the trial court sentenced him to 12 years in prison. Vernon timely filed a motion for new trial, arguing only that statements made by the prosecutor violated his due-process rights. The motion did not claim ineffective assistance of counsel as a ground upon which a new trial should be granted. On the same day the motion for new trial was filed, Vernon also filed a request for a hearing on the motion. A hearing on the motion was never set, and the motion was overruled by operation of law. This appeal followed.

**Analysis**

Vernon challenges the sufficiency of the evidence to support his conviction and the effectiveness of his trial counsel. He also contends that he suffered egregious harm as a result of misconduct by the prosecutor and a jury charge that did not require a unanimous verdict with respect to a specific charged incident.

I.     **Sufficiency of the evidence**

Every criminal conviction must be supported by legally sufficient evidence as to each element of the offense that the State is required to prove beyond a

5

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). To determine whether this standard has been met, we review all the evidence in the light most favorable to the verdict and decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (plurality op.). The evidence may be circumstantial or direct, and we permit juries to draw multiple reasonable inferences from the evidence presented at trial. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). The jury is the sole judge of witness credibility and of the weight given to any evidence presented. *Id.* A jury may believe or disbelieve some or all of a witness's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981); *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The testimony of a single eyewitness is sufficient to support a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Davis*, 177 S.W.3d at 359. We presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that determination. *Merritt*, 368 S.W.3d at 525–26.

As relevant to this case, a person commits the offense of indecency with a child if he engages in sexual contact with a child younger than 17 years of age. TEX. PENAL CODE § 21.11(a)(1). "Sexual contact" includes "any touching by a

person, including touching through clothing, of the anus, breast, or any part of the genitals of a child." *Id.* § 21.11(c)(1).

Vernon asserts that no rational factfinder could believe beyond a reasonable doubt that Amanda had been touched illegally on any one occasion because she testified that she was "confused" about when—and in whose presence—the offenses occurred. Vernon argues that the evidence was insufficient to support his conviction because reasonable doubt was "tacitly conceded" by the State when it urged the jury not to get "hung up" on which date the offense might have been committed. He contends that a note from the jury asking whether there "were other witnesses to the touching and the frequency to the touching with witnesses present" indicated the jury's uncertainty.

The testimony referenced in Vernon's brief is at least equally susceptible of being understood as Amanda's confusion about the question she was asked, rather than confusion about the details of the abuse. In any case, we defer to the jury on questions of witness credibility, and we presume that they resolved any confusion in favor of the verdict. *See Merritt*, 368 S.W.3d at 525–26.

Amanda was 12 years old at the time of trial. She testified that two or three days before she confided in her cousin about the abuse, Vernon touched her "breasts" and "butt," and he touched her "privates" under her clothes. Viewing the evidence in the light most favorable to the verdict, this was sufficient evidence for

the jury to have found, beyond a reasonable doubt, that Vernon was guilty of engaging in sexual contact with a child younger than 17 years of age. *See* TEX. PENAL CODE § 21.11(a)(1), (c)(1); *Lee v. State*, 176 S.W.3d 452, 457 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

Vernon requests that this court abandon its precedent and conduct a distinct factual-sufficiency review that would ignore the rule that jurors are the exclusive judge of witness credibility. The Court of Criminal Appeals in *Brooks v. State* directed intermediate courts to apply the *Jackson* standard of review as the sole standard for both legal and factual sufficiency challenges. 323 S.W.3d at 902; *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). We therefore overrule Vernon's challenges to the sufficiency of the evidence.

## II.   Ineffective assistance of counsel

Vernon argues that he was denied effective assistance of counsel because his trial lawyer (1) opened the door to damaging testimony that otherwise would have been inadmissible, (2) elicited damaging testimony from a witness, (3) failed to object to certain testimony and arguments, and (4) failed to cross-examine Amanda about prior false allegations.

A criminal defendant has the right to counsel to protect the fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684, 104 S. Ct. 2052,

2063 (1984). In this context, "a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Id.* at 685, 104 S. Ct. at 2063. Therefore, the "right to counsel is the right to the effective assistance of counsel." *Id.* at 686, 104 S. Ct. at 2063 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 n.14 (1970)). This right does not guarantee "errorless or perfect" representation by counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Rather, claims of ineffectiveness are judged by whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2064.

Ineffective-assistance claims are governed by a two-part test: (1) whether the counsel's performance was deficient, i.e., did counsel make errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment; and if so, (2) whether that deficient performance prejudiced the defense, i.e., is there a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. A defendant claiming ineffective assistance of counsel has the burden of showing by a preponderance of the evidence that his attorney failed to provide

9

constitutionally adequate representation. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

The adequacy of counsel's performance is judged against what is reasonable under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. There is a strong presumption that a trial counsel's conduct falls "within the wide range of reasonable professional assistance," and that counsel's decisions were motivated by sound trial strategy. *Id*. at 689; *see Robertson*, 187 S.W.3d at 483. Unless the record demonstrates that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of her subjective reasoning, we cannot determine ineffectiveness on direct appeal. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). A successful challenge of ineffectiveness must be firmly founded in the record, which "must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In reviewing an ineffective-assistance claim, the appellate court looks to the "totality of the representation and the particular circumstances of each case." *Id.*

Vernon asserts that his trial counsel was deficient because she opened the door to otherwise inadmissible evidence of extraneous acts, specifically the allegation that a relative performed oral sex on him when both of them were

10

children. Vernon's trial counsel called the relative as a reputation witness, and she asked the witness if she had ever thought Vernon had misbehaved with a child. The witness, who had known Vernon for many years, stated that she had not. During a bench conference immediately following the direct examination of this witness, the State asserted that the witness had admitted to prosecutors before trial that Vernon had made her perform oral sex on him when they were children. The State argued that the statement elicited on direct examination—that the witness had never known Vernon to misbehave with a child—"opened a door" to questioning her about the oral-sex incident. The court ruled in favor of the State. Defense counsel disagreed with the court's ruling, but the State was nevertheless permitted to question the witness about her previous statements. During the cross-examination, the witness denied that she performed oral sex on Vernon when they were children or that she ever had told prosecutors that she had.

The record indicates that counsel's question about whether the witness had ever known Vernon to misbehave with a child was intended to establish that she had not. But the record contains no indication of the extent of trial counsel's knowledge, if any, about the alleged childhood oral-sex incident, and counsel was not given the opportunity to explain her reason for asking these questions.

Next, Vernon argues that defense counsel's assistance was deficient because she failed to cross-examine Amanda on an alleged prior false allegation she made

11

against Vernon. However, the only information in the record about the prior allegation appears in an email sent from the prosecutor to defense counsel, and in the State's notice of intent to introduce extraneous offenses. The email described a 2008 case (eight years before this trial, when the complainant was approximately four years old) in which Amanda made an allegation against Vernon, and later recanted. She accused someone else, who later committed suicide. That case against Vernon was dismissed.

The State's notice of intent included a 2008 charge for aggravated sexual assault of a child, listing Amanda as the complainant in that case. The record does not establish any details of the retracted allegation, or any additional circumstances regarding the report or retraction. There are many possible explanations for why Vernon's attorney deliberately might have chosen not to cross-examine Amanda about an incident that occurred when she was four years old. The record does not allow this court to evaluate whether the accusation was actually false, or any similarities between this case and the earlier case. Vernon does not point to anything in the record that shows what information would have come out during a cross-examination of Amanda that could have changed the result of the trial. The record contains no explanation from counsel as to her reasoning for this decision.

Vernon further argues that he was denied effective assistance of counsel because his trial counsel elicited testimony from Detective Hayes that he asked for

an attorney during his interview. During cross-examination of Detective Hayes, counsel asked if Vernon had been cooperative during his interview, whether he was advised about his *Miranda* rights, and whether he asked for an attorney. According to Detective Hayes, Vernon was cooperative and was informed of his rights. Although he did not ask for an attorney at the beginning of the meeting, he later did ask for an attorney, and the interview was terminated.

Finally, Vernon contends that trial counsel was deficient in her failure to object to the State asking Detective Hayes if he had formed an opinion about whether Vernon had engaged in sexual contact with Amanda. Detective Hayes's opinion was that Vernon had done so. On this record, we cannot conclude that no reasonable attorney would have failed to object to this question. Further, given that the case was ultimately recommended to the district attorney's office for prosecution, Detective Hayes presumably believed Vernon was guilty of the charged offense. *See, e.g.*, *Sandoval v. State*, 409 S.W.3d 259, 295 (Tex. App.—Austin 2013, no pet.). Vernon provides no argument as to how counsel's failure to object to a statement that was essentially self-evident was particularly damaging to his defense, or that had counsel objected, there is a reasonable probability that the outcome of the case would have been different.

We cannot speculate as to counsel's reasoning for her decisions in defending Vernon, and we cannot say that no reasonable attorney would have made the same

13

decisions. *See Lopez*, 343 S.W.3d at 142–43. Limitations of the record often render a direct appeal inadequate to raise a claim of ineffective assistance of counsel. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Trial counsel ordinarily should be given the opportunity to explain her actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Moreover, an ineffective-assistance claim must be "firmly founded in the record," and the record must "affirmatively demonstrate the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *see also Thompson*, 9 S.W.3d at 813. That necessary firm foundation is lacking in this direct appeal. As such, this is not the "rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). We overrule Vernon's ineffective-assistance issue.

## III. Prosecutorial misconduct

On appeal, Vernon contends that the trial court erred by denying him a fair trial and by allowing his motion for new trial, which alleged due-process violations, to be overruled by operation of law. The motion for new trial attached no evidence, and Vernon failed to secure a hearing on the motion or otherwise present it for a ruling.

Vernon challenges, as he did in his motion for new trial, the overall fairness of his trial because the prosecutor improperly "testified" during cross-examination of a witness and made improper and prejudicial closing arguments. Defense counsel did not object contemporaneously with any of the prosecutorial statements now challenged on appeal. Vernon argues, however, that the "overall conduct of the prosecutor was so flawed" that it should have resulted in his motion for new trial being granted, and it constitutes fundamental error requiring reversal.

To preserve a complaint of prosecutorial misconduct for appellate review, the record must show that the defendant made a specific and timely objection to the error, requested an instruction that the jury disregard the improper matter placed before it, and moved for a mistrial. *Hajjar v. State*, 176 S.W.3d 554, 566 (Tex. App.–Houston [1st Dist.] 2004, pet. ref'd). If the record fails to establish preservation of error, a defendant forfeits his right to complain on appeal. TEX. R. APP. P. 33.1; *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). In an attempt to overcome the failure to preserve error, Vernon primarily relies on *Rogers v. State*, in which this court acknowledged that the rules of error-preservation may not strictly apply in a case of "serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process or, even worse, transforms the trial into a farce and mockery of justice . . . resulting in deprivation of fundamental fairness and due process of law." 725 S.W.2d 350,

15

360 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (citing *Berger v. United States*, 295 U.S. 78, 84, 88, 55 S. Ct. 629, 631, 633 (1935); *Ruth v. State*, 522 S.W.2d 517 (Tex. Crim. App. 1975); and *Kerns v. State*, 550 S.W.2d 91 (Tex. Crim. App. 1977)).

The alleged prosecutorial misconduct of which Vernon complains took place during the State's cross-examination of the defense's above-mentioned reputation witness. The witness acknowledged during direct examination that she had spoken with the prosecutor before trial about Amanda's allegations against Vernon. In response to the witness's testimony that she never had thought he had misbehaved with a child, the State asserted that "multiple witnesses, including this witness" previously had admitted that when they were children, Vernon made the witness perform oral sex on him. The State argued that the witness's testimony on direct examination opened the door to cross-examination about the oral-sex incident. Although defense counsel stated during the bench conference that she "disagreed" with the ruling, there was no objection to the State's subsequent questions except that one was "overbroad."

Vernon's first example of the alleged misconduct relates to the following exchange, which occurred during cross-examination conducted by the prosecutor:

Q:     Ma'am, we did talk Monday morning, correct?

A:     Yes, sir.

16

Q: Because I subpoenaed you on this case?

A: Yes, sir.

Q: And we talked about this case, and we also talked about something else that happened to you when you were a child, correct?

A: Yes, sir.

Q: And you want to tell the jury what happened:

[defense counsel]: Objection; overbroad question.

[prosecutor]: I'll rephrase, Judge.

Q: When you were a kid, [Vernon] did something bad with you, didn't he?

A: You inferring to [Vernon], or everybody that was involved?

Q: No. I'm talking about [Vernon].

A: We—yes sir.

Q: [Vernon] made you perform oral sex on him, didn't he?

A: No, sir.

Q: That's not what you told me Monday morning?

A: That is not what I told you.

Q: OK. What did you tell me?

A: I told you we played a game . . . all of us. I did not tell you, sir, that I was forced to perform oral sex on [Vernon].

Q: Did you perform oral sex on [Vernon]?

A: No, sir, I did not.

17

> Q: [Another witness] didn't walk in on you performing oral sex on [Vernon]?
>
> A: No, sir, she did not.

Other than the objection to a question as being overly broad, Vernon's counsel did not object to any part of this cross-examination. In the motion for new trial, Vernon characterized the prosecutor's "accusation" as being knowingly "false and unsupported." On appeal, he characterizes the prosecutor's line of questioning as improper "testimony."

The State later called another of Vernon's relatives as a witness. She testified that when Vernon and the previously mentioned witness were children, an adult relative called her, very upset, asking that she come over. This witness further testified that upon arrival, Vernon told her he had been caught with the previously mentioned witness "on her knees," performing oral sex on him.

We disagree with Vernon's characterization of the above-quoted line of questioning as improper "testimony" by the prosecutor. Moreover, Vernon presented no evidence that the prosecutor asked the question in bad faith. *See Rogers*, 725 S.W.2d at 359 (in evaluating a claim of prosecutorial misconduct, whether the prosecutor asked a question in bad faith is one factor to consider). The prosecutor's questions were an attempt to impeach the witness's testimony by suggesting that the witness gave a false impression to the jury by testifying that Vernon had never "misbehaved" with a child. Other evidence suggested that

18

Vernon made that same witness perform oral sex on him, and the prosecutor claimed that the witness herself had confirmed the story. Further, the prosecutor obtained permission from the court before exploring this line of questioning. This scenario is therefore distinguishable from *Rogers*, in which the inflammatory allegations at issue lacked any evidentiary support in the record. 725 S.W.2d at 360.

Vernon also confusingly suggests that because he is "a white man with an African American spouse"—a characterization which is not supported by references to the appellate record—this testimony "brought forth" a "powerful" racial "prejudicial stereotype." The prosecutor made no explicit reference to race, as happened in the single authority relied upon by Vernon's brief, *Buck v. Davis*, 137 S. Ct. 759 (2017). We reject the suggestion that this line of questioning somehow constituted fundamental error because of Vernon's race or that of his wife.

Vernon also alleges prosecutorial misconduct in numerous aspects of the State's closing argument. He asserts that the prosecutor indirectly accused Vernon of dishonesty by twice stating that "somebody" was "lying." Vernon contends that the prosecutor vouched for the complainant's credibility by stating, "if [Amanda] was lying yesterday, she's a best actor—actress—I've ever seen in my entire life," and "please do not trivialize what Defense counsel wants you to believe is some

unbeknown reason to lie." The prosecutor also stated that the defense witnesses "were the most choreographed bunch I've seen in a long time," and Vernon complains on appeal that this statement insinuated that defense counsel was their choreographer. Vernon also argues that the prosecutor invited members of the jury to place themselves in the shoes of one of the parties by stating: "For those of you who have children, this should be your worst nightmare." Finally, Vernon contends that the prosecutor misstated the law and invited the jury to lower the burden of proof when he stated: "if you find him not guilty, you're not only telling [Amanda], 'Now, I don't believe you. I'm sorry. I don't believe you," but you're also telling our community that there's going to be another [Amanda]."

Even if we were to conclude that each of these incidents, considered in isolation, constituted improper jury argument, we cannot say that the prosecutor's conduct considered as a whole deprived Vernon of substantial rights or a fair trial. By comparison, in *Temple v State* the appellant raised 75 issues related to the trial court's rulings and alleged prosecutorial misconduct. 342 S.W.3d 572 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). Despite finding several instances of prosecutorial misconduct, the court held that the appellant was not deprived of his substantial rights or a fair trial. *Id*. at 619. The court held that the prosecutor's improper questions as to a witness's veracity were harmless because they "merely emphasize[d] the obvious," that the appellant

disagreed with the factual assertions of the State's witnesses at trial. *Id*. at 615. The court concluded that the prosecutor's inflammatory arguments during closing that appellant's family committed "more aggravated perjury in this trial than this building has heard in a decade" and that a State's witness "has more honor in his little finger than [appellant's] family has in the whole mess of them," did not substantially influence the jury. *Id*. The court also found that appellant had waived any error in the State's alleged vouching for its witnesses' credibility in closing argument because the State previously had made a substantially similar argument without objection. *Id*. at 610.

Vernon's failure to contemporaneously object to prosecutorial misconduct, *see* TEX. R. APP. P. 33.1(a), or to present his motion for new trial for a ruling, *see* TEX. R. APP. P. 21.6, constitutes waiver of his particular objections. Moreover, the record considered as a whole does not reflect such persistent misconduct or impermissible prejudice as would result in a "probable cumulative effect upon the jury." *Rogers*, 725 S.W.2d at 361. We conclude that any misconduct by the prosecutor in this case does not rise to the level of fundamental error that requires no objection to preserve the right to raise the issue on appeal. We overrule Vernon's appellate issues alleging prosecutorial misconduct.

## IV.     Charge error on unanimity requirement

Vernon argues that the trial court erred by failing to properly instruct the jury that it was required to reach a unanimous verdict as to one specific incident of indecency with a child, as alleged in the indictment.

Texas law requires that a jury reach a unanimous verdict about the specific felony that the defendant committed. *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011); *Gomez v. State*, 498 S.W.3d 691, 695 (Tex. App.—Houston [1st Dist.] 2016, no pet.). The jury must agree upon a single and distinct incident that would constitute commission of the offense alleged in order to be unanimous in its verdict. *Cosio*, 353 S.W.3d at 771; *Gomez*, 498 S.W.3d at 695.

As it pertains to this case, non-unanimity may occur when the State charges a defendant with one offense and presents evidence that he committed the charged offense on multiple but separate occasions. *Cosio*, 353 S.W.3d at 772. To ensure unanimity, the charge must instruct the jury that its verdict must be unanimous as to a single offense. *Id*. A defendant may choose to require the State to elect a specific criminal act upon which it relies for conviction. *See id.* at 775. This choice is strategic and may be waived or forfeited. *Id*. For example, a defendant may choose not to exercise this right so the State will be jeopardy-barred from prosecuting any of the other offenses that were in evidence. *See id.*; *see also Ex parte Pruitt*, 233 S.W.3d 338, 346 (Tex. Crim. App. 2007). However, even when

the State is not required to elect, the trial judge bears the ultimate responsibility to ensure unanimity through the instructions in the jury charge. *See Cosio*, 353 S.W.3d at 776.

In analyzing a potential jury-charge error, we use a two-step review to decide whether reversal is required. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *Gomez*, 498 S.W.3d at 696. First, we decide whether an error exists. *Ngo*, 175 S.W.3d at 743. If we determine that an error exists, we analyze the error for harm. *Id.* When, as in this case, there was no timely and specific objection at trial, we review the error under the egregious harm standard set forth in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984). *See Cosio*, 353 S.W.3d at 776. To constitute egregious harm, the charge error must have affected "the very basis of the case," "deprive[d] the accused of a valuable right," or "vitally affect[ed] his defensive theory." *Gomez*, 498 S.W.3d at 696 (quoting *Almanza*, 686 S.W.2d at 172). To determine egregious harm, we evaluate the error in the light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Cosio*, 353 S.W.3d at 777.

The court's charge inquired about one act of indecency with a child that occurred on or about July 12, 2014. The charge instructed the jury to find Vernon guilty as charged if it found from the evidence beyond a reasonable doubt that on

23

or about July 12, 2014, Vernon intentionally engaged in sexual contact with Amanda, a child younger than 17 years of age. The charge also instructed the jury that any testimony related to extraneous offenses was to only be considered in determining Vernon's intent, Vernon's or Amanda's state of mind, or any previous relationship between Vernon and Amanda in connection with the offense. The charge also included a general unanimity instruction.

Vernon contends that the State alleged only one instance of indecency with a child in the indictment, but it presented evidence that the offense had happened multiple times. Accordingly, he argues that the charge was erroneous because it did not instruct the jury that it needed to unanimously base its verdict on a single offense among those presented. When evidence of multiple different instances of conduct constituting the same offense is presented, neither an extraneous-act instruction nor a general unanimity instruction is sufficient to ensure a unanimous verdict on a single incident. *See Gomez*, 498 S.W.3d at 697.

The State argues that no unanimity instruction was required in this case because the testimony established that Vernon committed a "specific, detailed offense" on or about a specific date as alleged in the indictment. The State contends that although there was evidence that Vernon engaged in sexual contact with Amanda on other unspecified dates, there was no testimony as to multiple

24

specific and detailed instances of the charged offense which the jury could have relied upon to reach a non-unanimous verdict.

Vernon relies upon this court's opinion in *Gomez*, as well as the opinion of the Court of Criminal Appeals in *Arrington v. State*, 451 S.W.3d 834 (Tex. Crim. App. 2015), to support his argument for reversal. In *Gomez*, the appellant had been charged with only one count of sexual assault, but the State presented evidence of at least three distinct criminal offenses. 498 S.W.3d at 697. This court concluded that the trial court's charge did not instruct jurors that their verdict must be unanimous as to a particular offense, and that weighed heavily in favor of a finding of egregious harm. *Id.* at 697, 699. However, the facts of Vernon's case are distinguishable. In *Gomez*, there was evidence of at least three separate incidents, including details about where each incident occurred and specific conduct by the appellant that could be described as sexual contact. *Id.* at 693–94. The appellant in *Arrington* was charged with numerous counts of aggravated sexual assault of a child, and during trial, the complainant described approximate dates, locations, specific conduct, and other circumstances related to four distinct instances in which the appellant engaged in sexual contact. 451 S.W.3d at 836–837. The jury charge included a general unanimity instruction, but it did not identify the particular incidents as they corresponded to the charges before the jury. *Id.* at 838.

The *Arrington* court agreed with the conclusion of the intermediate court of appeals that the jury charge was erroneous. *Id.* at 845.

In this case, Amanda testified in detail only as to the incident that happened on or about the date alleged in the indictment. When she was asked if Vernon had touched her more than 20 times, she responded: "probably." However, she never gave approximate dates or locations of the other incidents, nor did she describe Vernon's conduct during a specific separate instance that could constitute sexual contact. Based on the evidence in this case, there was no danger that some jurors would find that Vernon committed the offense of indecency with a child on or about the date alleged in the indictment, while others would have found that he committed that same offense on some other, unspecified date. *See Rodriguez v. State*, 446 S.W.3d 520, 531 (Tex. App.—San Antonio 2014, no pet.) (when complainant testified that the abuse occurred on several occasions, but did not provide many specific details as to the other alleged assaults, jury could not confuse "specific, detailed testimony" about the charged offenses "with the very vague reference" complainant made to sexual contact happening on several occasions); *see also Cueva v. State*, 339 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2011, pet. ref'd) (holding that complainant's vague testimony that appellant touched her on more than one occasion did not create danger of confusion on specific testimony of charged offense).

Accordingly, we conclude that a specific unanimity instruction was not required, and the trial court did not err by failing to charge the jury further on unanimity. We overrule Vernon's challenge to the jury charge.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Jennings, Massengale, and Caughey.

Justice Jennings, concurring in the judgment.

Publish. TEX. R. APP. P. 47.2(b).