**AFFIRMED and Opinion Filed April 20, 2020**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00116-CR

**MCAMIS HARDEN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1676548-N**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Evans
Opinion by Justice Evans

Appellant McAmis Harden appeals from the judgment adjudicating him guilty of indecency with a child by contact. In a sole issue, appellant asserts that the evidence was insufficient to prove the charged offense beyond a reasonable doubt. We affirm the trial court's judgment.

## BACKGROUND

Appellant was charged by indictment with indecency with a child by contact. Appellant pled not guilty and the case proceeded to a jury trial.

### A.     State Witnesses

Curtis Turner, complainant's teacher and coach, testified that complainant seemed different one morning during athletics because she was running with her head down. Turner asked her what was wrong and complainant started crying and said her uncle touched her. Curtis told his principal what complainant had said and reported the incident to CPS.

Complainant testified that on the day of the incident, her uncle—the appellant—came over to her house with a four-wheeler to ride. Complainant was fifteen at the time of trial and thirteen on the date of the alleged incident. Appellant is complainant's deceased father's brother. Appellant lived with his mother, Lenora, who is complainant's grandmother. After they returned from the ride, appellant asked complainant if she wanted to spend the night at her grandmother's—Lenora—house. Later that night, complainant was in her room watching television when appellant came in and laid behind her on the bed. Complainant testified that appellant put his hand in her pants and pressed up against her so that she could feel his penis behind her. Complainant said she felt scared while appellant touched her breasts, vagina and butt with his hands and that the touching was not accidental. She also testified that appellant had her perform oral sex on him and he performed oral sex on her. Appellant told her to get cleaned up and complainant went to the bathroom, locked the door, began crying and called her friend. Complainant said she was "panicking" and trying to figure out how she was going to leave.

Complainant tried calling her mother but she did not pick up so she called her other grandmother, Mary, to come pick her up. Complainant was crying too hard to explain what had happened so her friend told Mary in the three-way call. Lenora asked what was wrong when complainant left the house crying and complainant said she would tell her later. Complainant testified that appellant was panicking as she was leaving because he kept trying to talk to Mary and kept calling her on the way home. Mary told complainant's mother, Elizabeth, what had happened since complainant was crying. Elizabeth sent complainant to school the next day and that is when complainant told Turner what had happened the night before. Complainant further testified that she told the woman at the children's advocacy center about the touching but not the oral sex because it was embarrassing and she did not feel comfortable talking about it. After some time had passed, complainant told her mother about the oral sex and later told another person. Complainant admitted to having anger issues, fighting with her mother, going to therapy and taking medication for being "hyper." Complainant also stated she was sent several times to treatment centers to work with doctors and therapists because of her aggressive behavior. Complainant also testified that she had never accused anyone of touching her before this incident and currently takes four medications to help with anxiety, depression, and mood stabilization.

Mary Atkins testified she was close with complainant and often stayed at complainant's house to help watch her and her sibling while Elizabeth worked.

Mary testified that complainant called her late one evening and asked her to come pick her up from Lenora's house and that complainant was "very disturbed, crying, scared, like panic." Complainant's friend was on the call and told Mary what had happened. Mary went to get complainant and appellant walked complainant to the car putting his "arms around her neck, whispering into her ear." Mary said complainant cried the whole way home and then told her mother that "Uncle June" got in the bed with her and "started rubbing her over parts of her body." Mary testified that she broke down because complainant was so "brokenhearted." Mary stated that complainant had anger issues but this time she was acting like she was in distress and had "never cried like that before."

Elizabeth testified that while she had seen many angry outbursts from her child, she had never seen complainant cry like that before. Elizabeth also said that while complainant had anger issues and violent outbursts, she never had a problem with complainant lying to her.

Megan Peterson, a forensic interviewer for the Dallas Children's Advocacy Center, testified that she conducted an interview with complainant. Complainant was able to provide many periphery details and some sensory details which indicated to Peterson that she had experienced the event. Peterson testified that she did not see any indicators of coaching during complainant's interview. Ana Guzman, a counselor for the Dallas Children's Advocacy Center, testified that she had fifteen

sessions with complainant and stated that she suffered from post-traumatic stress disorder symptoms.

## B.     Defense Witnesses

Dr. Michael Gottlieb, a psychologist, testified that he reviewed complainant's therapy records and was retained by the defense to testify in the case.  Dr. Gottlieb criticized Guzman's assessment for failing to take into account complainant's behavioral history prior to the alleged abuse.  He also stated that he had not seen all of complainant's records and had not met with complainant.

Lenora Harden, appellant's mother and complainant's grandmother, testified at trial that if complainant is told "no," she "totally loses control."  She testified that complainant has attacked her both physically and verbally.  Harden stated that "[i]f [complainant's] in trouble, she will lie to put the blame on another person.  She lies to throw -- to shift the blame on someone else."  On the night of the alleged abuse, Harden testified that she was in her bedroom next to complainant's room and did not hear anything.

Appellant testified at trial and said that on the night of the alleged incident, he went to say goodnight to complainant in her room at Lenora's house and she asked him to take her to see her friend.  Appellant told complainant he would not take her to her friend's house and said complainant got upset.  Appellant said he left the room and went to bed.  Appellant denies all of complainant's allegations and does not know why she would make the accusations.

## STANDARD OF REVIEW

When reviewing whether there is legally sufficient evidence to support a criminal conviction, the standard of review we apply is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The evidence may be circumstantial or direct, and we permit juries to draw multiple reasonable inferences from the evidence presented at trial. *Vernon v. State*, 571 S.W.3d 814, 819 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). The jury is the sole judge of witness credibility and of the weight given to any evidence presented. *Id.* at 819–20. A jury may believe or disbelieve some or all of a witness's testimony. *Id.* at 820. On appeal, reviewing courts determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448.

## ANALYSIS

Pursuant to the penal code, a person commits indecency with a child by contact if "with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person engages in sexual contact with the child or causes the child to engage in sexual contact." *See* TEX. PENAL CODE § 21.11(a)(1). Sexual

–6–

contact is defined as "any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." *See* TEX. PENAL CODE § 21.01(2).

Complainant testified about the sexual contact and stated appellant touched her breast and vagina with his hands. She further testified that appellant had her perform oral sex on him and he performed oral sex on her. This Court has previously held that "[t]he testimony of the child victim alone is sufficient to support a conviction for sexual assault." *See Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.— Dallas 2006, pet ref'd); *see also* TEX. CODE CRIM. PROC. art. 38.07 ("A conviction under Chapter 21, Section 20A.02(a)(3), (4), (7), or (8), Section 22.011, or Section 22.021, Penal Code, is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred."). To the extent this case involves he-said, she-said incongruous testimony, we note that "[w]hen the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *See Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

Appellant argues that the inconsistencies in testimony and complainant's mental health issues undermined the verdict to such a degree that no rational juror could have found him guilty of the charged offense. We disagree. The factfinder is

the exclusive judge of witness credibility, the determiner of the weight accorded to each witness's testimony, and the reconciler of conflicts in the evidence. *See Lee*, 186 S.W.3d at 655. It is not our role to become a thirteenth juror. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Here, complainant, Elizabeth, and Mary all conceded that complainant had anger issues and violent outbursts, but Elizabeth and Mary also testified that complainant's behavior was different this time. Both Elizabeth and Mary testified that they had never seen complainant cry like she did that night. Complainant testified about the abuse and appellant testified that it did not happen. Lenora testified that she was in the next room and did not hear anything. To the extent the evidence contained credibility determinations and resolutions of conflicting evidence, we defer to the jury's assessment. *Id.* Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. For these reasons, we overrule appellant's sole issue.

## CONCLUSION

On the record of this case, we affirm the trial court's judgment.

/David Evans/

DAVID EVANS

Do Not Publish

JUSTICE

Tex. R. App. P. 47

190116F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

MCAMIS HARDEN, Appellant

No. 05-19-00116-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F16-76548-N.
Opinion delivered by Justice Evans. Justices Partida-Kipness and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered April 20, 2020.