**AFFIRMED and Opinion Filed October 8, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01285-CR

**MELVIN CHARLES HURNDON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 17-10478-86-F**

## MEMORANDUM OPINION

Before Justices Myers, Nowell, and Evans
Opinion by Justice Evans

Appellant Melvin Charles Hurndon appeals from his conviction of indecency

with a child. Appellant asserts that the evidence was insufficient to support the

conviction. Appellant also asserts that his trial counsel rendered ineffective

assistance of counsel. We affirm the trial court's judgment.

## BACKGROUND

Appellant was charged by indictment with indecency with a child. Appellant

pled not guilty and the case proceeded to a jury trial in September 2019.

Berteena Williams, ex-wife of appellant and complainant's grandmother, testified that she was married to appellant for over twenty-one years before divorcing him in January 2019.[1] In June 2017, complainant and her sister came to stay in Terrell with Williams and appellant for three weeks. During the first week, appellant and Williams took the girls and other grandchildren to a resort. They returned to Terrell on June 25th and Williams took some of the other grandchildren home on June 26th. On June 27, 2017, Williams called complainant's mother because the girls wanted to go home. Complainant's mother said she could not come home and Williams testified that complainant was sad. Later that day, Williams testified that she was in the back bedroom with both girls when she noticed complainant looked sad and asked what was wrong. Williams testified that complainant said that appellant "had been inappropriate with her, touched her inappropriately and spoke to her inappropriately." Williams testified that complainant touched her on June 26th when "she was getting ready to go to bed and he asked her to hug him before she went to bed and she said he reached and grabbed her then." When Williams asked where appellant had touched her, complainant pointed at her vagina. Williams took the girls to her friend's house and called CPS, and CPS told her to call the police. Williams called the police and asked appellant to leave the house.

---

[1] Williams is complainant's biological grandmother. William's son, Donovan, is complainant's father. Appellant, however, is not Donovan's father or complainant's biological grandfather. Williams testified that at the time of trial, complainant was twelve years old.

Tracy Ramirez, a forensic interviewer with the Children's Advocacy Center in Kaufman County, testified that she interviewed complainant on June 29, 2017. Ramirez said complainant did not seem sexually mature because she had a difficult time saying certain words that were uncomfortable for her. Ramirez also testified that while complainant was not able to define what a lie was, she was able to provide an example of a lie.

Complainant's mother, Demetria, testified that complainant is a good student, shy, and is scared of getting into trouble. After receiving a call from Williams, Demetria went to pick up complainant in Texas and take her back to Alabama. Demetria testified that complainant was very emotional back at home, "always crying and just asking, you know, why did this happen to me." Demetria took complainant to the National Children's Advocacy Center in Alabama as soon they were able to get an appointment to get complainant a counselor. Complainant saw a counselor once a week for approximately six months until she "graduated" from the counseling services.

Complainant testified that appellant was her step-grandfather but she used to call him grandfather. On the night of the incident, complainant testified that her grandmother, Berteena Williams, and sister were asleep in the back bedroom and appellant was sweeping while she was sitting at the kitchen table playing on appellant's phone. Complainant started to leave to go to bed when appellant stated he wanted a hug before she left. Complainant walked toward him and wrapped both

–3–

arms around appellant. Complainant testified that one of appellant's hands was touching her back and the other hand touched the top part of her vagina over her clothes. Complainant scooted back but appellant did not take his hands off her vagina. After this incident, complainant went to the back bedroom and went to sleep. The next day, complainant went to the refrigerator to get a popsicle and appellant wanted to speak with her. Appellant told complainant "he didn't want to hurt [complainant] and [complainant] didn't want to hurt him." Complainant testified that appellant told her "he knew it was big and he pointed at his private part." Complainant felt uncomfortable and walked away toward the back bedroom to see her grandmother and her sister. When Williams asked what was wrong, complainant told her what appellant had just said to her and started crying. Williams and the girls left the house and Williams asked complainant if anything else had happened. Complainant told her what had happened the night before when appellant touched her. Williams called the police and they met the police at a gas station. Later, they went to complainant's aunt's house to spend the night and complainant's mother arrived shortly after that. Even after she returned to Alabama, complainant testified that she felt upset and "[s]ometimes it would just come up to me out of nowhere" and she started to see a counselor.

Kathryn Chaney, the clinical director at the Children's Advocacy Center in Kaufman County, testified that she never met with complainant. Chaney testified that children are impacted differently by sexual abuse and it is possible for a child

–4–

to forget details or remember additional details later. In addition, childrens' memories regarding concepts of time, distance and location are different than adults, and they can forget or misremember those things.

Maury Buford, a special agent with the Texas Department of Public Safety assigned to the criminal investigations division, testified that she assists other police agencies by interviewing suspects. In July 2017, Buford interviewed appellant for approximately five and a half hours and Buford testified appellant was relaxed, cooperative and eager to talk. The interview was recorded in its entirety and excerpts were played for the jury. Appellant told Buford that he saw complainant's panties and was able to describe them, and he also told Buford that he saw complainant without panties as well. Appellant told Buford that the complainant was lying about the abuse because she did not want to get into trouble for not wearing panties and that he had scolded her for that behavior. Appellant also demonstrated for Buford how he hugged complainant that night and the video shows appellant having his left hand higher and right hand lower with his palm up. Appellant also told Buford that he did not accidentally touch her vagina that night when he hugged her.

The jury found appellant guilty of the offense of indecency with a child by sexual contact and sentenced him to seven years' imprisonment.

## ANALYSIS

### A.     Sufficiency of the Evidence

In his first issue, appellant asserts that the State failed to show that appellant (1) touched complainant's genitals and (2) committed any act with the intent to arouse or gratify the sexual desire of any person.

### 1)     Standard of Review

When reviewing whether there is legally sufficient evidence to support a criminal conviction, the standard of review we apply is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The evidence may be circumstantial or direct, and we permit juries to draw multiple reasonable inferences from the evidence presented at trial. *Vernon v. State*, 571 S.W.3d 814, 819 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). The jury is the sole judge of witness credibility and of the weight given to any evidence presented. *Id.* at 819–20. A jury may believe or disbelieve some or all of a witness's testimony. *Id.* at 820. On appeal, reviewing courts determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448.

### 2) Analysis

#### i) Penal code

The statute prohibiting indecency with a child reads, in relevant part, as follows:

> (a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person:
>
>> (1) engages in sexual contact with the child or causes the child to engage in sexual contact;
>
> \*\*\*
>
> (c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:
>
>> (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child;

*See* TEX. PENAL CODE § 21.11 (a), (c).

#### ii) Indictment

The indictment in this case charged appellant with the following offense:

> with the intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with "Gina" (a pseudonym), hereinafter styled the complainant, by touching the genitals of the complainant, a child younger than 17 years of age.

#### iii) Touching

Appellant first asserts that the State failed to show that appellant touched the genitals of the child. Essentially, appellant argues that the testimony in this case lacked clarity and was not specific enough to support a conviction because

complainant alleged that appellant's hand was close to her genitals, but his hand "never actually entered the area between her legs." We disagree. As stated above, complainant testified that when appellant hugged her, one of appellant's hands touched her back and the other hand touched her "private" over her clothes. During her testimony, complainant clarified that she meant vagina when she said private. On cross-examination, the following exchange took place:

> [Appellant's attorney]: Well, I guess, I'm just trying to figure out exactly how Mr. Hurndon's hand was positioned. Was it – did he actually put his hand between your legs?
>
> [Complainant]: It wasn't, like, in-between my legs. It was like –
>
> [Appellant's attorney]: Let me ask the question another way. You said it wasn't between your legs. So where was it that he was touching you?
>
> [Complainant]: It was, like, close to, like my – it was, like, on the top of my private, almost close to being all the way in.

Complainant further testified that appellant did not try to put his fingers inside of her, cup her breasts or any other part of her body, or try to put his hands inside of her clothes. Her testimony is, however, consistent that appellant touched her vagina over her clothing. "A conviction under Chapter 21, . . . Penal Code, is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred." TEX. CODE CRIM. PROC. art. 38.07; *see also Lee v. State,* 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd) ("[t]he testimony of the child victim alone is sufficient to support a

–8–

conviction for sexual assault."). Here, complainant informed her grandmother within one year of appellant's offense, so her uncorroborated testimony at trial is sufficient to support appellant's conviction. Accordingly, the State met its burden in establishing that appellant touched complainant's genitals.

### iv) Intent to arouse or gratify sexual desire

Appellant next asserts that the State failed to show that appellant committed any act with the intent to arouse or gratify the sexual desire of any person. Appellant asserts no evidence was presented that the alleged event was for the purpose of sexual gratification and "no testimony was developed to demonstrate any attempt by Appellant to arouse or gratify the sexual desire of any person by touching [complainant]."

Texas courts have noted that "[r]arely will there be direct evidence of what an accused intended at the time of the incident. Thus, the fact-finder usually must infer intent from circumstantial evidence rather than direct proof." *See Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd); *see also Rodriguez v. State*, No. 05-14-01225-CR, 2015 WL 8729283, at *4 (Tex. App.—Dallas Dec. 11, 2015, no pet.). More specifically, in the context of indecency with a child, the factfinder can infer the requisite intent to arouse or gratify sexual desire from a defendant's conduct, remarks, and all the surrounding circumstances. *Scott*, 202 S.W.3d at 408; *Rodriguez*, 2015 WL 8729283, at *4; *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981); *Keller v. State*, 604 S.W.3d 214, 226

(Tex. App.—Dallas 2020, pet. filed). No oral expression of intent or visible evidence of sexual arousal is necessary. *Rodriguez*, 2015 WL 8729283, at *4.

In this case and as stated above, complainant testified that appellant touched her vagina over her clothing with his hand. Complainant also testified that during the hug she scooted back but appellant did not take his hands off her vagina. Thus, complainant attempted to move away but appellant did not remove his hand from her vagina. In addition, complainant testified that on the following day appellant told her that "he didn't want to hurt [complainant] and [complainant] didn't want to hurt him." Complainant further testified that appellant told her "he knew it was big and he pointed at his private part." Finally, during appellant's interview with Buford, which was played for the jury, appellant spoke about how he could see complainant's panties under her shorts and how he noticed at some point she returned to the room without her panties. Appellant stated that he scolded complainant for this behavior. Based on appellant's touching of complainant, his conduct and remarks after the incident and during his interview, a rational jury could have concluded that appellant touched complainant with the intent to arouse or gratify his own sexual desire.

Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt that appellant committed the offense of indecency with a child. We resolve appellant's first point against him.

## B. Ineffective Assistance of Counsel

In his second issue, appellant asserts that his trial counsel was ineffective because he "(1) introduced evidence of extraneous offenses in the guilt/innocence phase of trial; (2) permitted the State to impermissibly bolster the alleged victim's testimony, and (3) permitted hearsay testimony of extraneous offenses during the punishment phase of trial."

### 1) Standard of Review

Texas courts apply the two-pronged *Strickland* test to determine whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* two-prong test for criminal cases in Texas.). Under this two-part test, appellant must establish that: (1) counsel's performance was deficient and that his assistance fell below an objective standard of reasonableness; and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687. Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). In order to satisfy the first prong, appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Further, there is a strong presumption that counsel's conduct fell within the

–11–

wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To prove the second prong, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Lopez*, 343 S.W.3d at 142.

We ordinarily will not declare trial counsel ineffective where there is no record showing counsel had an opportunity to explain himself. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Without evidence of the strategy employed, we will presume sound trial strategy. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Texas procedure makes it "virtually impossible" for appellate counsel to present an adequate ineffective assistance of trial counsel claim on direct review. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013). This is because the inherent nature of most ineffective assistance of trial counsel claims means that the trial court record "will often fail to 'contai[n] the information necessary to substantiate' the claim." *Id.* at 424 (quoting *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997)). As a result, the better procedural mechanism for pursuing a claim of ineffective assistance is almost always through writ of habeas corpus proceedings. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) ("Generally the record on direct appeal will not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard. The reasonableness of counsel's choices often involves facts that do not appear in the appellate record. A petition for writ of habeas corpus

–12–

usually is the appropriate vehicle to investigate ineffective-assistance claims."); *Ex parte Torres*, 943 S.W.2d at 475 ("[I]n most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims.").

### 2) Prejudicial extraneous offenses

During the guilt/innocence portion of the trial, appellant's trial counsel moved for the admission of Williams's petition for divorce and the resulting decree of divorce.[2] The petition for divorce includes the following statements: (1) "My spouse has been accused of sexually assaulting a minor child on more than one occasion." and (2) "I have a Protective Order against my spouse, and would like to keep the order active." Appellant asserts that the introduction of the protective order "affected Appellant's argument that the incident in question, was at most, accidental and not an incident involving a force or threat" and impeached "his own character with a crime of moral turpitude and violence." Appellant also argues that he was only charged with one count of indecency with a child and the admission of "another sexual assault on another occasion fostered the State's theory that indecency with a child is a prelude to sexual assault of a child." Appellant also argues that if "defense counsels [sic] was attempting to impeach Appellant's wife by demonstrating that she received the only asset of value during the divorce action, (RR 7:47-48), then trial

---

[2] Defendant's Exhibit 1 was the Final Decree of Divorce and Defendant's Exhibit 2 was the Petition for Divorce.

counsel could have simply tendered Defense Exhibit 1. There was no need to offer the admission of Defense Exhibit 2 which contained evidence of the other highly prejudicial extraneous offenses."

In response, the State argues that appellant's trial counsel "was using the house, via the divorce papers, to imply Williams had a financial motive to divorce Appellant." The State further asserts that appellant's "argument that only one of the two sets of papers should have been introduced is based upon hindsight, and does not equate to error." *See Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) ("The *Strickland* test is judged by the 'totality of the representation,' not by counsel's isolated acts or omissions, and the test is applied from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight.").

As stated above, we will not ordinarily declare trial counsel ineffective where there is no record showing counsel had an opportunity to explain himself. *See Goodspeed*, 187 S.W.3d at 392. Here, counsel was not afforded such an opportunity. Further, even if we were to conclude that appellant has satisfied the first *Strickland* prong, which we do not, appellant cannot demonstrate harm from admission of the divorce petition. Neither the State nor the defense referenced the multiple abuses or protective order listed in the divorce petition during trial. Thus, we cannot conclude that appellant proved the second prong. Here, there is no proof that but for this alleged unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687.

–14–

### 3) Bolstering testimony

Appellant asserts "the State sought to enhance/rehabilitate the testimony of [complainant] through the testimony of two experts, including Kathryn Chaney" and Tracy Ramirez through the use of hypothetical questions which "directly applied the facts of Appellant's case to her expert opinions" such as:

> [State]: Ms. Chaney, I'm going to ask you just a few hypotheticals. If a 10-year-old child that has been touched on the genitals over the clothes by a grandfather exhibits symptoms of freezing, taking long pause when discussing it, and states that when she's reminded of it, of the sexual abuse, become sad, are those symptoms of trauma?
>
> [Chaney]: They can be.
>
> ***
>
> [State]: Ms. Chaney, if a 10-year-old child who was touched on the genitals by her grandfather and grandfather made remarks that were sexual in nature to her, were to disclose those to her grandmother, if she were to remember those events of when she made those disclosures differently than the grandmother, would that be considered normal?
>
> [Chaney]: I think so.
>
> ***
>
> [State]: Based off your training, education, and experience, did [complainant] appear to be a child who sought attention to you?
>
> [Ramirez]: No.

Appellant asserts that trial counsel failed to object to any hypotheticals which solicited an expert opinion regarding the specific facts of appellant's case and which served to "directly or indirectly bolster the credibility" of complainant to offset the fact that complainant's "account of the timing of her initial outcry differed" from

that of her grandmother.[3]  Appellant argues that experts are not allowed to offer an opinion as to the credibility of a particular child complainant.[4]

Appellant's trial counsel did not object to Chaney's or Ramirez's testimony at trial.  Thus, to prevail on an ineffective assistance claim based on his trial counsel's failure to object, appellant must show that the trial court would have committed harmful error in overruling the objection if trial counsel had objected. *DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).  In regard to whether this testimony is admissible, we note that while opinions on a child's truthfulness are not admissible, testimony on whether a child complainant exhibits symptoms consistent with sexual abuse or indications of coaching or manipulation has been held not to constitute an opinion on the child's truthfulness.  *See Cantu v. State*, 366 S.W.3d 771, 777 (Tex. App.—Amarillo 2012, no pet.) ("Expert testimony that a child did not exhibit indications of coaching or manipulation has been held not to constitute an opinion on the child's truthfulness.");

---

[3] Appellant notes that Williams testified that complainant told her that appellant had touched her inappropriately in the back bedroom.  Further, complainant testified that she told her grandmother about the touching in the car, not in the bedroom.

[4] In support of this assertion, appellant relied upon *Kirkpatrick v. State*, 747 S.W.2d 833, 836 (Tex. App.—Dallas 1987, pet. ref'd).  In *Kirkpatrick,* this court noted that expert testimony has been admitted widely for the purpose of explaining general behavior characteristics of child sexual abuse victims as a class.  *Id.* at 835.  "The expert's testimony about the general behavioral traits of child victims—*e.g.,* delay in reporting the incident, recantation, truancy, embarrassment, running away from home, and inconsistent versions of abuse—explains to the jurors that such behavior, which might otherwise be attributed to inaccuracy or falsification, is typical of the class of victims and does not necessarily indicate a lack of credibility."  *Id.* at 836.  This Court further noted that "after the jurors have become familiarized with the typical behavioral traits of the class, there is no need for further expert testimony, through which the expert expresses, *either directly or indirectly,* her opinion as to the credibility of a particular child complainant. It is well settled that a witness may not give an opinion as to the truth or falsity of other testimony."  *Id.*

*Reyes v. State*, 274 S.W.3d 724, 729 (Tex. App.—San Antonio 2008, pet. ref'd.) ("An expert may testify that the witness exhibits symptoms consistent with sexual abuse, but not that a witness is truthful."). In this case, neither Chaney nor Ramirez testified about complainant's truthfulness but they did address whether a child in complainant's position might exhibit symptoms of trauma or sought attention. Further, even assuming appellant is correct regarding the admissibility of the evidence, the record is silent as to why counsel did not object. We cannot say on this record that trial counsel's performance was deficient because he failed to object to Chaney's and Ramirez's testimony.

### 4) Failure to object to hearsay testimony

In the punishment phase of the trial, the State recalled Williams to testify regarding incidents involving two other children. Williams testified that "I believed [complainant] because I had heard that he had done that with two other children before, one at that time and then the young lady that he – that told me that he had did it to her. She told me about another young lady that was with her." Appellant's trial counsel failed to object to the hearsay nature of her testimony, and appellant asserts that this testimony constituted ineffective assistance of counsel.

Here, appellant's trial counsel cross-examined Williams in regard to this testimony as follows:

> [Appellant's trial counsel]: The people you mentioned before, how did you hear about that?
>
> [Williams]: One of the victims told me about her story.

–17–

[Appellant's trial counsel]:  Were any charges filed?

[Williams]:  No.  She was a child.  Nobody believed her, and the other victim has come forth since then and told me her story.

[Appellant's trial counsel]:  And were any charges filed in that?

[Williams]:  No.  She never told anybody.

[Appellant's trial counsel]:  None of this has ever been reported to the authorities?

[Williams]:  No.

Further, we note that the State called complainant's aunt during the punishment phase.  The aunt testified that appellant—her stepfather—would wake her up by snatching the covers off of her when she was dressed in just a nightgown and did not have underclothes on.  The aunt stated she was "exposed a lot" by appellant between the ages of eight and twelve and that these acts made her feel very uncomfortable.  Once again, without evidence of the strategy employed, we will presume sound trial strategy.  *See Rylander*, 101 S.W.3d at 110.  Thus, without additional evidence as to why trial counsel did not object, we cannot conclude such a failure to object to testimony constituted ineffective assistance of counsel.  For all the above reasons, we resolve appellant's second point against him.

## CONCLUSION

On the record of this case, we affirm the trial court's judgment.

/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

191285F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

MELVIN CHARLES HURNDON,
Appellant

No. 05-19-01285-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial
District Court, Kaufman County,
Texas
Trial Court Cause No. 17-10478-86-F.
Opinion delivered by Justice Evans.
Justices Myers and Nowell
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered October 8, 2020.