**Opinion issued May 2, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-22-00454-CR**
_____

**DERWIN HADLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1606283**

---

## MEMORANDUM OPINION

A jury found appellant Derwin Hadley guilty of aggravated sexual assault,[1]

and the trial court assessed his punishment at 22 years' confinement. In three

issues, Hadley complains that the trial court erred in denying (1) his motion for

---

[1]　　*See* TEX. PENAL CODE § 22.021.

mistrial following a witness's testimony alluding to an extraneous offense; (2) his request to include a spoliation instruction in the jury charge; and (3) his motion for mistrial based on prosecutorial misconduct.

We affirm.

## Background

Hadley first encountered the complainant, a prostitute, while she was walking along Bissonnet at night, in Houston, Texas. Hadley approached her in a vehicle that she described as a gray, four-door Toyota. The complainant rode in the passenger seat while Hadley drove to a nearby apartment complex and parked in a parking space. The complainant reported that he then locked the doors, grabbed her in a headlock, pulled a knife, and ordered her to remove her clothing and climb into the backseat of the vehicle. Hadley sexually assaulted her at knife point.

The complainant attempted to reach for her phone, which had fallen to the floor during the assault, but Hadley choked and punched her. The knife cut her ear and hand. Hadley then opened the car door, pushed the complainant out of the car, and quickly drove away with the complainant's clothes, wallet, and phone still in the car. A resident of one of the nearby apartments found the complainant in the parking lot and allowed her to use the phone. The complainant called a friend, who drove the complainant to the hospital where a sexual assault examination was conducted and her wounds were treated.

2

Hadley was arrested the following day when another woman told police that Hadley had attempted to sexually assault her. Hadley was stopped by police while driving a vehicle that matched the description given by the complainant, and the complainant's belongings were discovered in the vehicle. DNA results from the complainant's sexual assault exam were also submitted, showing that Hadley could not be excluded as the contributor of the DNA recovered.

In addition to the complainant's testimony regarding the assault and the medical and DNA evidence, the State presented testimony from the police officers who investigated the assault, including Officer S. Wunderlich. Officer Wunderlich testified that his investigation began when he "searched the crimes from the high priority crimes from the day before [and] found some similarities in a reported sexual assault case." Hadley objected to this testimony as introducing evidence of an extraneous offense and as being an example of prosecutorial misconduct, and he moved for a mistrial. The trial court denied the motion for mistrial, but it instructed the jury to disregard Officer Wunderlich's statement.

Officer Wunderlich further testified that he went to the apartment complex to review surveillance footage. He saw footage of a gray Toyota matching the description given by the complainant entering and then leaving the apartment complex at the approximate time of the assault, but neither the complex's employees nor Officer Wunderlich knew how to copy the surveillance video. He

3

testified that he asked his sergeant to send someone to collect the video, and he wrote in his report that an officer arrived to copy it, but the surveillance video was never copied. The only portion of the video presented at trial was a view of the surveillance footage that was recorded by Officer Wunderlich's body camera as he watched a portion of the video at the apartment complex.

Hadley sought to include an adverse-inference spoliation instruction in the jury charge in connection with the State's failure to obtain a copy of the apartment complex's video surveillance footage. The trial court denied this request. The jury found Hadley guilty of aggravated sexual assault.

Hadley elected to have his punishment assessed by the trial court. Prior to the start of the punishment phase, Hadley reasserted a motion for mistrial, citing multiple instances of prosecutorial misconduct throughout trial, including the State's question to Office Wunderlich that resulted in his answer that he "found some similarities in a reported sexual assault case," and other incidents involving the handling of evidence and the prosecutor's alleged failure to inform the defense of certain conversations with potential witnesses. The trial court again denied the motion for mistrial.

During the punishment phase, the State introduced evidence of several other sexual assaults against other women implicating Hadley. Each assault occurred inside a vehicle, and the women were assaulted in a manner similar to the

complainant, including that they were threatened with a knife. The trial court assessed Hadley's punishment at 22 years' confinement.

## Denial of Mistrial

In his first issue, Hadley argues that the trial court erred in denying his motion for mistrial after one of the State's witnesses alluded to an extraneous offense. In his third issue, Hadley argues that the trial court erred in denying his motion for mistrial "due to pervasive prosecutorial misconduct."

### A. Standard of Review

We review the denial of a motion for mistrial for an abuse of discretion. *Becerra v. State*, 685 S.W.3d 120, 127 (Tex. Crim. App. 2024); *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). In applying an abuse-of-discretion standard of review, we uphold the trial court's decision to deny a mistrial "if it was within the zone of reasonable disagreement." *Archie*, 221 S.W.3d 699; *Griffin v. State*, 571 S.W.3d 404, 416 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). In determining whether a trial court abused its discretion by denying a mistrial, we balance three factors: (1) the severity of the misconduct (including its prejudicial effect), (2) the effectiveness of the curative measures taken, and (3) the certainty of the conviction or punishment assessed absent the misconduct. *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) and *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim.

App. 1998)); *McDonnell v. State*, 674 S.W.3d 694, 699 (Tex. App.—Houston [1st Dist.] 2023, no pet.).

A mistrial is an extreme remedy to be used sparingly for "a narrow class of highly prejudicial and incurable errors" committed during the trial process. *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018); *Archie*, 340 S.W.3d at 739 (explaining that motion for mistrial is appropriate only when "the objectionable events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant" (internal quotations omitted)); *Hawkins*, 135 S.W.3d at 77 (recognizing that mistrial is trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile" (internal quotations omitted)); *Williams v. State*, 417 S.W.3d 162, 175 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) ("A mistrial is an extreme remedy and should be exceedingly uncommon.").

Because a mistrial is an extreme remedy, it should be granted "'only when residual prejudice remains' after less drastic alternatives are explored." *Ocon v. State*, 284 S.W.3d 880, 884–85 (Tex. Crim. App. 2009) (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)). "Less drastic alternatives include instructing the jury 'to consider as evidence only the testimony and exhibits admitted through witnesses on the stand,' and, questioning the jury 'about the

6

extent of any prejudice, if the instructions alone do not sufficiently cure the problem.'" *Id.* at 885 (quoting *Arizona v. Washington*, 434 U.S. 497, 521–22 (1978) (White, J., dissenting)). When the prejudice is curable, an instruction by the trial court to disregard eliminates the need for a mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004).

**B.      Mistrial for Allegedly Improper Introduction of Extraneous Offense**

In his first issue, Hadley argues that the trial court erred in denying his motion for mistrial based on an exchange that occurred while the State was questioning Officer Wunderlich:

> State:      Okay, so on May 9th, 2018, were you assigned to investigate any evidence retrievable from in regards to a sexual assault?
>
> [Officer]:   We—I searched the crimes from the high priority crimes from the day before, found some similarities in a reported sexual assault case.
>
> [defense]:   Objection, Your Honor. May we approach?

Outside the jury's presence, the defense continued, "I'm going to object to this officer discussing other extraneouses. He just said there were similar sexual assaults in the area. That's in direct violation of this Judge's order not to discuss extraneouses. I'm respectfully requesting for a mistrial at this time, Your Honor." After further discussion, the defense clarified, "We're objecting to the testimony and we're objecting to the witness testifying and prosecutorial misconduct." The

7

State argued that it called Officer Wunderlich because the defense had admitted his body-camera footage, and his testimony was meant to explain the similarities between the reported assault and the evidence on the surveillance footage from the apartment complex, which in turn explained why Officer Wunderlich went to that location. The defense agreed to stipulate that the footage came from Officer Wunderlich's body camera.

The trial court denied the motion for mistrial, but it encouraged the State to focus its questions on the body-camera footage. When the jury returned to the courtroom, the defense asked for and was granted an instruction to disregard. The trial court informed the jury, "Ladies and gentlemen of the jury, please disregard the last statement. Thank you. It will be stricken from the record." The jury charge further instructed the jury that it should not consider or discuss any matters not in evidence.

On appeal, Hadley argues that the trial court erred in denying his motion for mistrial based on Officer Wunderlich's implication of the existence of an extraneous offense. Applying the three-part balancing test, we conclude that the trial court did not abuse its discretion in denying Hadley's motion for mistrial on this basis.

First, considering the severity of the misconduct and its prejudicial effect, we conclude that this factor weighs in favor of the trial court's denial. *See*

*Hawkins*, 135 S.W.3d at 77. Hadley argues that the State's remark was improper because it "knowingly violated" the trial court's limine order and placed new, prejudicial information regarding extraneous sexual assault offenses before the jury. The State's question, however, addressed the single, charged offense. Officer Wunderlich's answer made only a vague reference to "similarities." His comment did not directly reference Hadley's conduct or an extraneous offense that was attributed to him. Thus, it seems unlikely that the jury became aware of a new, extraneous assault offense because of Officer Wunderlich's statement. We conclude that the prejudicial effect of the statement was low because the challenged testimony was brief and non-specific. *See, e.g.*, *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998) (concluding that mistrial not warranted when reference to extraneous offense was "not . . . concrete" but "merely vague speculation").

Second, considering the effectiveness of the curative measures taken, we conclude that this factor also weighs in favor of the trial court's denial of the motion for mistrial. *See Hawkins*, 135 S.W.3d at 77. Hadley requested and was granted an instruction to disregard. The trial court also included an instruction in the jury charge informing the jury that it should not consider or discuss any matters not in evidence. We presume that the jurors followed the trial court's instruction. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (observing that

9

instruction to disregard generally cures any error associated with improper reference to extraneous conduct committed by defendant); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (noting that appellate court presumes jury followed trial court's instructions to disregard).

A trial court should grant a mistrial only when an unresponsive answer that mentions extraneous offenses is "clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). As discussed above, Officer Wunderlich's comment that he "searched . . . the high priority crimes from the day before, [and] found some similarities in a reported sexual assault case" was not clearly prejudicial to Hadley, nor was it of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *See Drake v. State*, 123 S.W.3d 596, 603–04 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (determining that witness's unsolicited statement that officers "were working so many burglaries on [the appellant]" was mitigated by curative instruction); *see also Carlin v. State*, 14-22-00362-CR, 2023 WL 5543515, at *5 (Tex. App.—Houston [14th Dist.] Aug. 29, 2023, no pet.) (memo. op., not designated for publication) (holding that any harm

from complainant's "vague reference to an alleged extraneous sexual assault was significantly mitigated by the trial court's instruction to disregard").

Finally, considering the certainty of the conviction absent the misconduct, we likewise conclude that this factor weighs in favor of the trial court's denial. The trial court could have determined that Officer Wunderlich's statement had minimal impact on the jury's finding. *See Hawkins*, 135 S.W.3d at 77. The evidence against Hadley was compelling even without the brief statement by Officer Wunderlich regarding "similarities in a reported sexual assault case." The complainant offered consistent and detailed testimony regarding the assault, identifying Hadley as her attacker. The State introduced her medical records that corroborated portions of her testimony and DNA evidence demonstrating that Hadley could not be excluded as the contributor to the samples recovered during the sexual assault examination hours after the assault.

We overrule Hadley's first issue.

## C. Mistrial for Prosecutorial Misconduct

In his third issue, Hadley argues that the trial court erred in denying his motions for mistrial based on prosecutorial misconduct.

To preserve error in cases involving prosecutorial misconduct, the appellant must have (1) made a timely and specific objection; (2) requested an instruction that the jury disregard the matter improperly placed before the jury; and (3) moved

11

for a mistrial. *Vernon v. State*, 571 S.W.3d 814, 823 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *Jimenez v. State*, 240 S.W.3d 384, 402 (Tex. App.—Austin 2007, pet. ref'd); *see also Compton v. State*, 666 S.W.3d 685, 729, 731 (Tex. Crim. App. 2023) (holding that objection is required to preserve complaint of prosecutorial misconduct and citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), requiring that objection be pursued to adverse ruling). However, in cases where the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," error preservation may not be required. *Jimenez*, 240 S.W.3d at 402 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see Vernon*, 571 S.W.3d at 823 (recognizing case law holding that "the rules of error-preservation may not strictly apply in a case of 'serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process'") (quoting *Rogers v. State*, 725 S.W.2d 350, 360 (Tex. App.—Houston [1st Dist.] 1987, no pet.)). The prosecutorial misconduct must have denied the defendant a fair trial. *Jimenez*, 240 S.W.3d at 402. "It is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id.* (quoting *Darden*, 477 U.S. at 181).

Hadley objected numerous times to what he categorizes as conduct that "repeatedly violated [his] rights to due process" by "misrepresenting the interactions [the prosecutor] had with witnesses." He argues that the prosecutor's

12

conduct showed a "pattern of disregard for her duties under *Brady*, Code of Criminal Procedure [article] 39.14, and the due process clause of the United States Constitution."[2]

### 1.    *Disclosure of the complainant's prostitution*

At trial, the complainant testified that she was walking on the night of the assault because she was working as a prostitute. The defense then objected and complained that the State had committed a *Brady* violation by not disclosing to Hadley that the complainant was engaging in prostitution on the night of the assault. The State responded that it did not provide *Brady* notice because the complainant mentioned for the first time at trial that she was engaging in prostitution on the night of the assault. The prosecutor explained that the complainant came into town for trial from out of state, and the prosecutor had not

---

[2]    Code of Criminal Procedure article 39.14 governs discovery. It requires that the State produce, and permit inspection and duplication of, "any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers," or "other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, and control of the state or any person under contract with the state." TEX. CODE CRIM. PROC. art. 39.14(a). This includes a requirement for the State to "disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." *Id.* art. 39.14(h); *see Brady v. Maryland*, 373 U.S. 83 (1963) (holding that violation of constitutional due process rights occurs when state suppresses, willfully or inadvertently, evidence favorable to defendant); *Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021) (holding that state's statutory obligation to disclose evidence under article 39.14 "is much broader" than constitutional obligations imposed by *Brady*).

13

been able to talk to her about the underlying facts of the case. They had a brief discussion right before the complainant took the stand, and the prosecutor did not know until the complainant testified exactly how the complainant would answer a question about what she was doing on the night of the assault.

The defense argued that the complainant's statements were inconsistent—i.e., that she originally told police she was "walking" but then revealed for the first time that she was engaging in prostitution on the night of the assault. The trial court said, "Seems like you have an opportunity to cross examine her." The defense was allowed to question the complainant, who stated that she never told the State prior to trial that she was engaging in prostitution on the night of the assault.

The State argued that, although no one had specifically asked and thus the complainant had never specifically informed anyone that she was engaging in prostitution on the night of the assault, the context of the investigation made that fact obvious to all parties. The defense argued that the State was being untruthful in asserting that it had not previously talked to the complainant about engaging in prostitution and argued that the State's behavior constituted prosecutorial misconduct for failing to disclose potentially exculpatory evidence under *Brady*, Code of Criminal Procedure article 39.14, and the U.S. Constitution. The defense requested a mistrial, arguing that there was no other cure for the misconduct, which

14

the trial court denied. The defense pointed out that the complainant was presenting new testimony providing details that the defense had never heard before. The State argued that new evidence frequently comes out when witnesses testify at trial. The trial court ultimately determined that it would postpone the start of the trial the following day, stating:

> [I]t sounds like you're saying you're taking a different approach. So hopefully that gives you more time to do whatever you need to do. Anything you need to request from the State or whatever you have time to do that as well. I'm just going to give you a little bit more time. We'll start at noon, but I'm not doing a mistrial.

Applying the three-part balancing test, we conclude that the trial court did not err in denying the motion for mistrial based on this conduct. *See Hawkins*, 135 S.W.3d at 77. Regarding the severity of the misconduct and the prejudice arising from it, the trial court could have believed, based on the record, that no *Brady* or other violation occurred because Hadley has not identified any evidence that was known to the State but unknown to him. *See Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011) ("*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist. Similarly, the State does not have such a duty if the defendant was actually aware of the exculpatory evidence or could have accessed it from other sources.") (internal citations omitted); *see also Ex parte Chavez*, 213 S.W.3d 320, 325 (Tex. Crim. App. 2006) (stating that no due

15

process violation occurs "under circumstances in which the defendant himself already knew about the exculpatory facts").

The fact that the complainant worked as a prostitute was known to Hadley prior to the complainant's testimony on the stand. For example, the record reflects that, prior to trial, Hadley received information that the complainant had a previous arrest for prostitution and requested a continuance to further explore that evidence. During voir dire, the defense was able to question potential jurors regarding the complainant's work as a prostitute, such as by asking about reasons that someone might lie about being sexually assaulted, including, "Is there a reason why a prostitute might lie about being sexually assaulted?" This demonstrates that Hadley was not prejudiced by the State's purported failure to disclose information that the complainant was engaging in prostitution on the night of the assault because he had enough notice to ask for a pre-trial continuance and to question the venire panel regarding the subject. *See also Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999) (holding that defendant cannot meet his burden under *Brady* where, despite late disclosure, evidence is nonetheless disclosed in time for him to use it in his defense).

Furthermore, the trial court allowed the defense extra time during trial to gather information or adapt its trial strategy as a curative measure. *See Hawkins*, 135 S.W.3d at 77; *see also Ocon*, 284 S.W.3d at 884–85 (holding that mistrial is

16

appropriate "'only when residual prejudice remains' after less drastic alternatives are explored"). In addition to the extra time granted by the trial court, the defense had an opportunity to cross-examine the complainant regarding any inconsistencies in her testimony and to question her regarding her work as a prostitute. And, as discussed above regarding the certainty of conviction absent the misconduct, the complainant's testimony regarding the assault was clear and consistent with the medical evidence. The jury heard her account of the assault and her testimony that she had been working as a prostitute on the night of the offense. Thus, it does not appear from the record that the jury's guilty finding was impacted by any delay by the State in informing Hadley that the complainant engaged in prostitution. *See Hawkins*, 135 S.W.3d at 77.

### 2. *Disclosure of evidence related to the complainant's cell phone*

Hadley again alleged prosecutorial misconduct related to the disclosure of evidence about the complainant's cell phone, which was recovered in Hadley's car following his arrest. The prosecutor disclosed in an early-morning email, while trial was ongoing, that the prosecutor and the complainant had a conversation during a break in testimony the previous day about authenticating the cell phone found in Hadley's car as belonging to the complainant. Hadley again sought a mistrial, arguing that, despite evidence that the prosecutor and the complainant had met and discussed the case, the defense had never gotten any notes or notices about

17

calls or conversations between the State and the complainant. The trial court denied the motion for mistrial, stating, in part, "I don't see anything being ultimately material." However, when the complainant was unable to correctly identify the cell phone's serial number, the trial court excluded any evidence that the cell phone recovered from Hadley's car upon his arrest belonged to the complainant.

Applying the three-part balancing test, we conclude that the trial court did not err in denying the motion for mistrial based on this conduct. *See id.* We first observe that Hadley has failed to show that the State had material, exculpatory evidence that it failed to disclose. *See Pena*, 353 S.W.3d at 810. Hadley argues that, despite evidence that the prosecutor spoke with the complainant, the State never provided any notes or other information regarding such a meeting. But Hadley points to nothing in the record indicating that such notes exist or that those conversations revealed material, exculpatory evidence. *See id.* ("*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.").

Even if we assume that the prosecutor's email disclosure of the conversation with the complainant was misconduct or an improper delay in providing evidence, there was no prejudice to Hadley because the trial court excluded the evidence.

18

Thus, any prosecutorial misconduct did not impact the fairness of the trial because the State had to meet its burden of proof without this evidence. *See Hawkins*, 135 S.W.3d at 77.

### 3. *Questioning Officer Wunderlich*

As discussed above, Hadley objected to Officer Wunderlich's statement that he "searched the crimes from the high priority crimes from the day before [and] found some similarities in a reported sexual assault case." In addition to complaining that it introduced extraneous-offense evidence, Hadley also objected that the question and answer constituted prosecutorial misconduct.

Applying the three-part balancing test, we conclude that the trial court did not err in denying the motion for mistrial based on prosecutorial misconduct related to this testimony. *See id.* There was no evidence that the prosecutor was attempting to circumvent or violate the limine order. The prosecutor asked only about the underlying assault and did not implicate any extraneous offenses. Even if the question itself was somehow improper, "[t]he asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard." *Ladd*, 3 S.W.3d at 567. As discussed above, Officer Wunderlich's response was short and vague, the trial court issued an instruction to disregard that we presume the jury followed, and the entire interaction did not have

a significant impact on the certainty of the conviction. *See Hawkins*, 135 S.W.3d at 77.

### 4. *Disclosure of notes from conversation with potential extraneous offense complainant*

Hadley argues that the prosecutor engaged in misconduct regarding the disclosure of conversations with B.S., the complainant in another assault attributed to Hadley. B.S. was a potential witness for the State during the punishment phase if the jury returned a guilty verdict. While the jury was deliberating the guilt-innocence verdict, Hadley learned that B.S. was present in the courthouse and that B.S. had met with prosecutors prior to trial. He argued to the trial court that the prosecutor failed to disclose notes from her conversations with B.S. and that the prosecutor's conduct demonstrated a pattern of misrepresenting her interactions with potential witnesses. The State then informed the trial court that it would not call B.S. as a witness in light of the controversy.

The trial court denied the motion for mistrial. Hadley nevertheless asked the trial court to allow him to question B.S. regarding her conversations with the prosecutors, which the trial court permitted. When she was questioned under oath, B.S. denied discussing the underlying facts of her case with the prosecutor. They instead discussed the fact that B.S. herself had been arrested and that the trial would occur soon. B.S. believed that someone might have taken notes during her meeting with prosecutors but she was not sure.

20

After the jury returned its guilty verdict, and before the start of the punishment phase of trial, Hadley again moved for mistrial, asserting that the prosecutor had lied about whether she had met with B.S. and about what had been discussed between the prosecutor and B.S. prior to trial. Hadley further asked the trial court to "suppress any further calling of witnesses during the punishment hearing" and that the trial court "schedule a prosecutor[ial] misconduct hearing." The State reiterated that it disagreed with the defense's characterization of the situation, but it agreed that it would not present B.S. as a witness during the punishment phase of trial. The trial court denied Hadley's request to exclude the State's punishment witnesses and the motion for mistrial.

Applying the three-part balancing test, we conclude that the trial court did not err in denying the motion for mistrial based on this conduct. *See id.* Again, we observe that Hadley has not identified any material, exculpatory evidence that the State obtained from B.S. but failed to provide to the defense. And, even if we assume that the prosecutor's actions or conversations with B.S. constituted misconduct, there was no prejudice to Hadley because B.S. did not testify at trial. The trial court took corrective measures when the concerns regarding B.S.'s conversation with the State came to light—it allowed the defense to explore those concerns further. B.S. testified under oath that she did not discuss the facts of the case with the prosecutor, and the State nevertheless agreed not to call B.S. as a

21

witness. Thus, the determination of Hadley's sentence could not have been impacted by any prosecutorial conduct related to B.S. *See id.*

Examining the record as a whole, we further conclude that, when taken together, the alleged instances of misconduct did not undermine the reliability of the fact-finding process and did not deprive Hadley of a fundamentally fair trial. *See Vernon*, 571 S.W.3d at 823; *Jimenez*, 240 S.W.3d at 402 (holding that, when misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," error preservation may not be required); *Bautista v. State*, 363 S.W.3d 259, 263 (Tex. App.—San Antonio 2012, no pet.) (holding that, when there is "serious and continuing prosecutorial misconduct that undermines the reliability of the factfinding process . . . resulting in deprivation of fundamental fairness and due process of law," defendant may be entitled to reversal and new trial even though few objections have been perfected). Although he alleges that the prosecutor engaged in a pattern of misconduct, Hadley points to no evidence in the record supporting this allegation. As discussed above, none of the bases for mistrial set out above were meritorious. The record does not demonstrate prosecutorial misconduct sufficient to undermine the reliability or fundamental fairness of Hadley's trial. *See Jimenez*, 240 S.W.3d at 402.

We overrule Hadley's third issue.

## Spoliation Instruction

In his second issue, Hadley argues that the trial court erred in denying his request for a spoliation instruction to be included in the jury charge to address the failure of police to collect surveillance video of the crime scene.

At trial, Hadley sought to include an instruction stating:

> You're instructed that when a party has possession of a piece of evidence, [and] at the time the party knows or should have known the evidence would be in controversy, and thereafter in bad-faith the party disposes of it, makes it unavailable or fails to produce it, the jury may consider that the evidence would have been unfavorable to the State.

The State argued that this instruction was not proper. Because the video surveillance footage would only potentially be exculpatory, the defense was required to show bad faith. The State argued that, "at best [the defense has] shown negligence on the part of HPD." The State pointed out that "nobody destroyed it," and the officers who testified "all said that they thought somebody else was taking care of" recording it. The defense, on the other hand, argued that Officer Wunderlich's testimony demonstrated bad faith because he "made some false representations," including about the nature of the footage captured on his body camera and about another officer arriving at the complex to copy the footage. The trial court denied the request to include the spoliation instruction.

## A. Standard of Review

A review of jury-charge error involves a two-step analysis. *Rogers v. State*, 677 S.W.3d 705, 712 (Tex. Crim. App. 2023); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Guzman v. State*, 539 S.W.3d 394, 400 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). First, we must determine whether error actually exists in the charge, and, second, if error does exist, whether sufficient harm resulted from the error to require reversal. *Rogers*, 677 S.W.3d at 712; *Guzman*, 539 S.W.3d at 400. If the defendant preserved error by timely objecting to the charge, an appellate court will reverse if the defendant demonstrates that he suffered some harm as a result of the error. *Rogers*, 677 S.W.3d at 712; *Guzman*, 539 S.W.3d at 400. We review a trial court's decision not to submit an instruction in the jury charge for an abuse of discretion. *Guzman*, 539 S.W.3d at 400; *see Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023).

"Spoliation concerns the loss or destruction of evidence." *Guzman*, 539 S.W.3d at 401. A spoliation instruction is an adverse-inference instruction that allows the jury to infer that the missing evidence would have favored the defendant. *Jones v. State*, 531 S.W.3d 309, 321 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). A spoliation adverse-inference instruction is a defensive issue. *Carroll v. State*, 266 S.W.3d 1, 3 (Tex. App.—Waco 2008, pet. ref'd). "A defendant is entitled to an instruction on any defensive issue raised by the

evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense." *Celis v. State*, 416 S.W.3d 419, 430 (Tex. Crim. App. 2013).

"In the criminal context, when spoliation concerns potentially useful evidence, the defendant bears the burden of establishing that the State lost or destroyed the evidence in bad faith." *Guzman*, 539 S.W.3d at 401; *see Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010). "Legally, what precisely constitutes 'bad faith' on the part of the State is not entirely clear." *Guzman*, 539 S.W.3d at 402 (quoting *Napper*, 322 S.W.3d at 231 (internal quotations omitted)). However, bad faith is "more than simply being aware that one's action or inaction could result in the loss of something that is recognized to be evidence." *Id.* "Bad faith requires a showing of 'some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful.'" *Id.* "When conduct can, at worst, be described as negligent, the failure to preserve evidence does not rise to the level of a due process violation." *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

The duty to preserve evidence is limited to evidence that possesses an exculpatory value that was apparent before the evidence was destroyed. *Id.* at 401 (citing *White v. State*, 125 S.W.3d 41, 43–44 (Tex. App.—Houston [14th Dist.]

25

2003, pet. ref'd)). A defendant must affirmatively show that the lost evidence was favorable and material to his defense. *Id.*

## B.    Analysis

Hadley failed to demonstrate that he was entitled to the spoliation instruction. There is no evidence that the State, in bad faith, lost or destroyed the surveillance footage from the apartment complex. *See id.* at 402. To the contrary, Officer Wunderlich testified that, as part of his investigation, he reviewed surveillance video from the apartment complex where the complainant testified the assault took place. He observed the footage with his body camera recording as he watched. The preserved footage showed a vehicle matching the vehicle description given by the complainant arrive at the apartment complex at 10:13 p.m. The footage showed that it then left the complex at a high rate of speed at 10:45. Officer Wunderlich asked that another officer be sent to copy the surveillance footage because he was a trainee, and neither he nor the employee of the apartment complex knew how to copy the footage. Officer Wunderlich recorded in his report that Officer X. Flores came to the location and was attempting to copy the footage when Officer Wunderlich left scene. Officer Flores, however, testified that he was not instructed to record the footage. The surveillance video was not copied, but the partial recording of the first twenty-one minutes of the footage captured by Officer Wunderlich's body camera was available and introduced at trial.

This evidence does not demonstrate that the State, in bad faith, lost or destroyed any evidence. Rather, it demonstrates that the State acted to review and obtain the footage, but failed to do so because neither Officer Wunderlich nor the apartment complex employees knew how to copy it. Hadley argues that Officer Wunderlich demonstrated bad faith by "intentionally filing a report stating that [he] observed an officer making a copy of a recording when that never occurred." The record, however, does not support Hadley's statement that Officer Wunderlich's actions were intentionally directed at preventing Hadley from obtaining the evidence. While the police's actions here might demonstrate negligence or an awareness that inaction could lead to the loss of something that is recognized to be evidence, that is not enough to show bad faith. *See Napper*, 322 S.W.3d at 238; *Guzman*, 539 S.W.3d at 402. Nothing in the record demonstrates any improper motive on the part of the police or the State. Hadley had not yet been identified as a suspect at the time Officer Wunderlich failed to obtain the surveillance footage, so the failure to copy the footage cannot be attributed to personal animus. *See Napper*, 322 S.W.3d at 238; *Guzman*, 539 S.W.3d at 402. And, although the State never obtained possession of the surveillance footage itself, it did preserve Officer Wunderlich's body camera footage, which shows that it did not act with the intent to prevent the suspect from obtaining potentially useful evidence. *See Napper*, 322 S.W.3d at 238; *Guzman*, 539 S.W.3d at 402.

27

Furthermore, there is no indication that any of the complained-of evidence was potentially exculpatory or useful to Hadley. *See Guzman*, 539 S.W.3d at 401. The portion of the video available from Officer Wunderlich's body-camera recording establishes that Hadley's vehicle was present at the scene of the complainant's assault, and the timing on the video corroborated the complainant's account of the time of day and length of time that she was with Hadley. We observe that Hadley was able to cross-examine the officers who watched the surveillance footage, including Officer Wunderlich, about the things not shown in the body-camera footage. Hadley pointed to the fact that the body-camera footage did not show a vehicle license plate number or the complainant. He also pointed out that the footage did not show certain activity that would have corroborated the complainant's account, such as people coming to her aid. He argued to the jury that the absence of security footage allowed an inference that the footage did not corroborate the complainant's account of the offense. Nothing in the record supports a conclusion that the surveillance footage that was not copied showed anything that would be helpful to Hadley's defense.

We overrule Hadley's second issue.

## Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).