**Opinion issued June 24, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00722-CR

_____

**FIDEL ANTONIO BLANDON VASQUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 482nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1745762**

---

## MEMORANDUM OPINION

A jury convicted Fidel Antonio Blandon Vasquez of the second-degree felony offense of burglary of a habitation, and the trial court sentenced him to six years' imprisonment. *See* TEX. PENAL CODE § 30.02(a)(3), (c)(2). In three issues on appeal,

Vasquez argues that his trial counsel provided ineffective assistance and that the evidence was legally insufficient to support his conviction. We affirm.

## Background

In October 2021, Vasquez lived across the street from the complainants—Carlos Perez Paz, his wife Olga Morales, and their four young children—who had just moved in a few months earlier. Paz and Morales had seen Vasquez but had not spoken much to him.

In the early hours of October 31, Vasquez was lying on his couch intoxicated from alcohol and methamphetamine. He claims he heard his daughter's voice in his head saying that a man was holding her at the house across the street, where Paz and Morales lived. Vasquez went to the house, snuck in the backyard, and broke the glass on the back door with a guitar, waking Paz. Paz saw Vasquez swinging the guitar at the door like a baseball bat, so he returned to his bedroom, woke up Morales, and told her to call 911.

Paz then went towards the back door and saw that Vasquez had broken through the glass and "was inside" the house and "in front of [Paz]." Paz saw Vasquez point a gun at and threaten to kill him. Morales came out of her bedroom and stood outside her daughter's bedroom near the back door. She could not see Vasquez well and did not see a gun, but she heard him threaten Paz. Vasquez heard Morales on the phone with 911 and told her to put the phone down. Vasquez said

that he was looking for a girl, so Morales told her daughter to hide under the bed. Neither Paz nor Morales knew what girl Vasquez spoke of, but Morales told Vasquez that "she already left" to get him to leave the house. Her quick thinking worked, and Vasquez left.

Houston Police Department officers searched the neighborhood and eventually found Vasquez hiding in front of another neighbor's house. Officers searched the vicinity and Vasquez's home with permission, but they never found a gun. Vasquez was arrested and taken into custody.

The State indicted Vasquez for the first-degree felony offense of burglary of a habitation, alleging that Vasquez entered a habitation and committed or attempted to commit aggravated assault with a deadly weapon. *See id.* § 30.02(a)(3), (d). He pleaded not guilty.

During a pretrial conference, the parties discussed Vasquez's prior convictions and eligibility for community supervision. The State asserted that Vasquez did not have any prior felony convictions, and his prior convictions included "only an immigration deportation case and a DUI out of California." Vasquez's attorney asserted that Vasquez was ineligible for community supervision because he was not a United States citizen and he previously had been deported:

> So the record is clear, Your Honor, if he was a citizen of the United States, that would make him automatically eligible for probation if [he] went to trial and lost. Since he is not a citizen of the United States and

3

he has a previous deportation, he cannot accept a probation from the State.

Vasquez did not request any consideration of community supervision.

At trial, the State called Paz, Morales, and two HPD officers who responded to Morales's 911 call. Paz and Morales testified that Vasquez broke the glass on the back door and entered their house, and Morales denied giving anyone permission to be in her home. Paz and Morales also testified that Vasquez threatened to kill Paz. But only Paz testified that Vasquez had a gun. Morales testified that she could not see Vasquez well from where she was standing, but she heard him make threats.

Vasquez testified in his defense. He admitted to drinking eight or nine beers and smoking methamphetamine sometime before going to his neighbors' home. He testified that the drugs and alcohol made him hear voices saying that his daughter was in danger at Paz's house. Vasquez also admitted to breaking Paz's glass door with a guitar, but he denied entering the home, having a gun on him, or making any threats. Vasquez expressed remorse for his actions, which he blamed on mixing alcohol and drugs. He testified that the night of the burglary was only the third time he had ever used methamphetamine. He denied having a drug or alcohol problem, although he acknowledged that his current criminal charge indicated he did have such a problem.

The two HPD officers testified that they detained Vasquez after they found him hidden in another neighbor's front yard. They never found a gun, and Vasquez

4

did not hurt anyone. One officer testified that Paz had surveillance cameras at his house, but Paz was unable to show the officers any recordings from these cameras. The trial court admitted into evidence Morales's 911 call, a video recording from an officer's body camera, and photographs of the broken glass in the back door.

After both sides rested, the trial court submitted a jury charge with instructions on a primary offense and two lesser-included offenses. The primary charged offense was first-degree burglary of a habitation by committing or attempting to commit aggravated assault with a deadly weapon. *See id.* The two lesser-included offenses were second-degree burglary of a habitation by committing assault and misdemeanor criminal trespass. *See id.* §§ 30.02(a)(3), (c)(2), 30.05(a)(1), (d)(3)(A)(i).

The jury found Vasquez guilty of second-degree burglary of a habitation. At Vasquez's request, the trial court sentenced him to six years' imprisonment. Vasquez did not file any post-judgment motions. This appeal followed.

## Ineffective Assistance of Counsel

In his first and second issues, Vasquez contends that his trial counsel provided ineffective assistance of counsel by failing to file a motion for community supervision and by failing to present mitigation evidence concerning Vasquez's alcohol and drug use.

## A. Standard of Review and Governing Law

The Sixth Amendment to the United States Constitution guarantees the right to counsel in criminal prosecutions. U.S. CONST. amend. VI; *see also* TEX. CONST. art. I, § 10. "[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970)).

To prevail on an ineffective assistance claim, a defendant must prove that (1) his trial counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Id.* at 687; *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023). The defendant bears the burden of proving both prongs by a preponderance of the evidence. *Strickland*, 466 U.S. at 687; *Dryer v. State*, 674 S.W.3d 635, 646 (Tex. App.—Houston [1st Dist.] 2023, pet. ref'd). "The purpose of this two-pronged test is to assess whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result." *Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013).

Under the first prong, trial counsel's performance is deficient if it falls below an objective standard of reasonableness. *Hart*, 667 S.W.3d at 781. Judicial scrutiny of counsel's performance is highly deferential. *Villa*, 417 S.W.3d at 463. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Hart*, 667 S.W.3d at 781 (quoting *Strickland*, 466 U.S. at 689).

Thus, an ineffective assistance claim "must be firmly rooted in the record." *Id.* at 782. Generally, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Id.* (quoting *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)); *see also Dryer*, 674 S.W.3d at 647 ("The reasonableness of counsel's decisions often depends on facts that do not appear in the record."). Trial counsel should ordinarily be given an opportunity to explain his conduct on the record before a court will sustain an ineffective assistance claim. *Hart*, 667 S.W.3d at 782.

When counsel has not been given such an opportunity, courts "commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013)). Counsel's performance is deficient only if the court finds, as a matter of law, that "no reasonable trial strategy could justify trial counsel's acts or

omissions, regardless of his or her subjective reasoning." *Id.* (quoting *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

Under the second prong, "[p]rejudice may be measured in one of two ways: a reasonable probability of a different outcome or a reasonable probability of a different decision by the defendant." *Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022). "Choosing between the two depends on the possible result of the deficient performance." *Id.*

In most circumstances, a defendant claims that his trial counsel's deficient performance resulted in a guilty verdict or a harsher punishment. *See id.* To establish prejudice, the defendant must show that a reasonable probability exists that absent the alleged errors, the factfinder would have had a reasonable doubt concerning guilt or would have assessed a more lenient punishment. *Id.*

But where a defendant alleges that counsel's deficient performance might have caused him to waive a judicial proceeding he was otherwise entitled to, then the defendant is prejudiced if a reasonable probability exists that the deficient performance caused him to waive the proceeding. *Id.* (citing *Lee v. United States*, 582 U.S. 357, 364–65 (2017)). In this more limited circumstance, inquiring about the possibility of a different outcome is the wrong prejudice standard because "we cannot accord any presumption of reliability to judicial proceedings that never took place." *Id.* (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)); *see Miller v.*

8

*State*, 548 S.W.3d 497, 501 (Tex. Crim. App. 2018) ("[P]roving a better outcome from a proceeding never had is so speculative as to be unworkable."). Rather, "[i]n that situation the focus is on the defendant's decision making." *Swinney*, 663 S.W.3d at 90 (citing *Lee*, 582 U.S. at 366–67). "The different-outcome question is relevant only to the extent that it sheds light on whether the deficient performance affected the defendant's decision making." *Id.* (citing *Roe*, 528 U.S. at 486).

The Court of Criminal Appeals has repeatedly applied this measure of prejudice to complaints that trial counsel gave bad advice about or misunderstood the law concerning community supervision. *See, e.g.*, *id.* at 90, 92; *Miller*, 548 S.W.3d at 498; *State v. Recer*, 815 S.W.2d 730, 731–32 (Tex. Crim. App. 1991). To establish that trial counsel was ineffective for misunderstanding the law regarding community supervision, "more must be apparent from the record than trial counsel's mere mistake." *Recer*, 815 S.W.2d at 731. Rather, the record must show that (1) the defendant was eligible for community supervision, (2) counsel's advice regarding community supervision was not part of a valid trial strategy, (3) the defendant's decision regarding community supervision was based on counsel's erroneous advice, and (4) the defendant's decision would have been different if counsel had correctly informed him of the law. *Id.* at 731–32; *accord Swinney*, 663 S.W.3d at 90–91; *Miller*, 548 S.W.3d at 501–02.

"A defendant is not entitled to errorless representation." *Dryer*, 674 S.W.3d at 647. Courts review ineffective assistance claims by considering the totality of the representation. *Id.* The "ultimate focus" of the prejudice standard is "the fundamental fairness of the proceeding whose result is being challenged." *Miller*, 548 S.W.3d at 499 (quoting *Strickland*, 466 U.S. at 696). A single error will rarely establish prejudice unless the error is "both egregious and had a seriously deleterious impact on counsel's representation as a whole." *Dryer*, 674 S.W.3d at 647 (citing *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013)).

## B. Motion for Community Supervision

In his first issue, Vasquez argues that his trial counsel was ineffective for not filing a motion for community supervision when Vasquez was otherwise eligible for jury-recommended community supervision under Code of Criminal Procedure article 42A.055.[1] Vasquez argues that he was eligible because he did not have any prior felony convictions.[2] He argues that his counsel misunderstood the law on

---

[1] Neither party addresses whether Vasquez would have been eligible for judge-ordered community supervision under article 42A.053, which does not require a pretrial motion. *See* TEX. CODE CRIM. PROC. art. 42A.053.

[2] Vasquez also argues that he was eligible because the jury did not find that he used or exhibited a deadly weapon during commission of the offense. Lack of a deadly weapon finding, however, is not a condition for eligibility under article 42A.055. *See id.* arts. 42A.055, 42A.056. A deadly weapon finding does affect eligibility for judge-ordered community supervision under article 42A.053, but Vasquez does not base his appellate arguments on article 42A.053. *See id.* arts. 42A.053, 42A.054(b)(1). Vasquez is correct that the judgment does not contain a deadly weapon finding. *See id.* art. 42A.054(c) (requiring trial court to enter affirmative

community supervision as shown by his statement to the trial court that "if he [Vasquez] was a citizen of the United States, that would make him automatically eligible for probation if [he] went to trial and lost. Since he is not a citizen of the United States and he has a previous deportation, he cannot accept a probation from the State." Vasquez contends that counsel's failure to file a motion for community supervision in this case is a "per se" violation of his right to effective assistance of counsel.

The State responds that the record is unclear why trial counsel believed Vasquez could not accept community supervision. But the State speculates that community supervision could "lead to his immediate deportation" or he was ineligible under article 42A.059 based on his prior deportation case.

*Swinney*, *Miller*, and *Recer* appear to govern Vasquez's first issue. The defendants in those cases based their ineffective assistance claims on their trial counsel's alleged bad advice about or misunderstanding of the law of community supervision. *Swinney*, 663 S.W.3d at 92; *Miller*, 548 S.W.3d at 498; *Recer*, 815 S.W.2d at 731. Vasquez similarly complains that he would have been eligible for community supervision but for his trial counsel's failure to file a motion for

---

finding regarding defendant's use or exhibition of deadly weapon or firearm in court's judgment). Nevertheless, to the extent Vasquez also asserts that he was eligible for community supervision under article 42A.053, our analysis would remain the same that the record on direct appeal does not support this assertion.

community supervision on the apparently mistaken belief that his citizenship status affected his eligibility for jury-recommended community supervision. The parties did not brief this point, and we need not delve too deeply into these opinions to resolve this issue.

Suffice it to say, "more must be apparent from the record than trial counsel's mere mistake" in the law governing Vasquez's eligibility for jury-recommended community supervision. *See Recer*, 815 S.W.2d at 731; *see also Hart*, 667 S.W.3d at 782 (stating that ineffective assistance claim "must be firmly rooted in the record"). For Vasquez to prevail, the record must show that (1) he was eligible for community supervision, (2) trial counsel's advice regarding community supervision was not part of a valid trial strategy, (3) his decision not to ask the jury to recommend community supervision was based on his counsel's erroneous advice, and (4) his decision would have been different if his counsel had correctly informed him of the law. *See Swinney*, 663 S.W.3d at 90–91; *Miller*, 548 S.W.3d at 501–02; *Recer*, 815 S.W.2d at 731–32. On appeal, the parties dispute whether Vasquez was eligible for community supervision.

Both parties present compelling, if underdeveloped, arguments concerning Vasquez's eligibility for community supervision. Vasquez relies on article 42A.055, which authorizes a jury that imposes confinement as punishment for an offense to "recommend to the judge that the judge suspend the imposition of the sentence and

12

place the defendant on community supervision." TEX. CODE CRIM. PROC. art. 42A.055(a). Upon such a recommendation, the judge must suspend imposition of the sentence and place the defendant on community supervision. *Id.* A defendant is eligible for jury-recommended community supervision only if:

> (1)    before the trial begins, the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony in this or any other state; and

> (2)    the jury enters in the verdict a finding that the information contained in the defendant's motion is true.

*Id.* art. 42A.055(b). Article 42A.056 contains additional limitations on article 42A.055, including that it does not apply if the jury imposes a sentence exceeding ten years' imprisonment or if the defendant is convicted of certain offenses other than burglary. *Id.* art. 42A.056. None of these additional limitations apply in this case.

The record reflects that Vasquez's trial counsel did not file a motion for community supervision as required under article 42A.055. *See id.* art. 42A.055(b)(1). At a pretrial hearing, the trial court asked the parties about Vasquez's prior convictions. The State asserted that Vasquez did not have any prior felony convictions, although it did note two other prior convictions: "only an immigration deportation case and a DUI out of California." Defense counsel added:

> So the record is clear, Your Honor, if he was a citizen of the United States, that would make him automatically eligible for probation if [he] went to trial and lost. Since he is not a citizen of the United States and

13

he has a previous deportation, he cannot accept a probation from the State.

The trial court confirmed that Vasquez was "not probation eligible anyway from a jury; is that correct[,]" and defense counsel responded, "[t]hat is correct."

The State conceded at trial that Vasquez did not have any prior felony convictions, which appears to be the only relevant potential restriction on his eligibility for article 42A.055 community supervision other than counsel's decision not to file a motion for community supervision.

Although neither party addresses it, at least two courts have overruled ineffective assistance claims based on counsel's failure to file a motion for community supervision where the record contained no sworn evidence that the defendant was eligible for community supervision. *E.g.*, *Mercado v. State*, 615 S.W.2d 225, 228 (Tex. Crim. App. 1981); *Beyince v. State*, 954 S.W.2d 878, 880 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *see also Hart*, 667 S.W.3d at 782 (stating that ineffective assistance claim "must be firmly rooted in the record"). Vasquez does not direct the Court to any sworn record evidence establishing his eligibility for community supervision, and our own review of the appellate record has not revealed any such evidence. *See Strickland*, 466 U.S. at 687 (stating that defendant bears burden of proving both prongs of ineffective assistance claim). Although the State conceded at the pretrial hearing that Vasquez did not have any

14

prior felony convictions, it did not assert that he was eligible for community supervision, and it disputes this point on appeal.

But assuming without deciding that Vasquez was eligible for jury-recommended community supervision, he has not established that no valid trial strategy supported his counsel's decision not to file a motion for community supervision, that his decision not to request community supervision was based on his counsel's erroneous advice, and that his decision would have been different had counsel correctly informed him of the law. *See Swinney*, 663 S.W.3d at 90–91.

Concerning trial strategy, Vasquez contends that the failure to file a motion for community supervision is a "per se" violation of his right to counsel, but he cites no authority supporting this contention. The State argues that the record does not show why defense counsel believed Vasquez could not accept community supervision. However, counsel told the trial court that Vasquez was ineligible for community supervision based on his citizenship status, which is some record evidence of counsel's reasoning on this issue. The State also argues that the deportation consequences of community supervision could have affected counsel's decision to forego a request for community supervision, but the State provides no further analysis of this argument.

Based on the parties' arguments and the circumstances presented here, it is difficult to discern a reasonable trial strategy for not filing a motion for community

15

supervision, particularly when considering that Vasquez could later withdraw his request if he determined based on counsel's advice that the consequences outweighed the benefits. *See id.* at 90 (stating that "focus" of prejudice inquiry in these circumstances "is on the defendant's decision making"). Nevertheless, Vasquez did not afford his counsel an opportunity to explain his conduct and how some unidentified strategy might have guided his decision not to request community supervision. *See Hart*, 667 S.W.3d at 782.

Furthermore, Vasquez does not argue that his decision to forego a request for community supervision was based on his counsel's erroneous advice or that his decision would have been different if counsel had correctly informed him of the law. *See Swinney*, 663 S.W.3d at 90–91. Nor does the record reveal any evidence supporting such an argument.

We conclude that Vasquez has not established on the record before us that his trial counsel violated his Sixth Amendment right to counsel. Although he raises colorable claims with minimal record support concerning his counsel's decision not to file a motion for jury-recommended community supervision, Vasquez's claim is not "firmly rooted in the record" such that we can conclude his counsel's error was more than a "mere mistake." *See Hart*, 667 S.W.3d at 782; *Recer*, 815 S.W.2d at 731.

We overrule Vasquez's first issue.

16

## C. Evidence of Mitigating Circumstances

In his second issue, Vasquez contends that his counsel was ineffective for failing to investigate and present mitigation evidence concerning Vasquez's alcohol and drug use. He argues that "this offense was related to [his] voluntary or involuntary use of alcohol and drugs," and "further testing" was required "to determine how and to what extent this affected [his] mental capacity at the time this offense occurred." He further argues that such evidence should have been presented as a mitigating circumstance during both the guilt-innocence phase and the punishment phase of trial. *See Wiggins v. Smith*, 539 U.S. 510, 533 (2003) ("We thus conclude that the available mitigating evidence, taken as a whole, 'might well have influenced the jury's appraisal' of Wiggins' moral culpability.") (quoting *Williams v. Taylor*, 529 U.S. 362, 398 (2000)).

The State responds that the record on direct appeal is insufficient to overcome the strong presumption that counsel's performance was not deficient. It further responds that even assuming counsel performed deficiently, Vasquez has not established that the outcome of trial would have been different because both the jury and trial court heard evidence about his alcohol and drug use during the guilt-innocence phase of trial, including his contradictory testimony about whether he had a "problem" with alcohol or drugs.

We conclude that Vasquez's second issue is not "firmly rooted in the record." *See Hart*, 667 S.W.3d at 782. The appellate record does not indicate whether or to what extent trial counsel investigated Vasquez's drug and alcohol use and its effect on the commission of the offense. *See id.* Vasquez did not give his counsel an opportunity to explain his decision whether and to what extent to investigate Vasquez's drug and alcohol use. *See id.* Nor has he identified any evidence that would have been uncovered by such an investigation. *See Martinez v. State*, 449 S.W.3d 193, 209–10 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (overruling ineffective assistance claim where defendant "presented no specific indication of the [mitigation and other] evidence that he claims should have been introduced by his trial counsel, nor is there any indication that such evidence actually exists").

At trial, Vasquez testified that he drank several beers and smoked methamphetamine before burgling his neighbors' house.[3] As the State notes, Vasquez testified inconsistently about whether he had a "problem" with alcohol or drugs. Defense counsel told the jury during opening statements that Vasquez, "in a

---

[3] The only other evidence in the appellate record concerning Vasquez's alcohol or drug use is a competency evaluation report. This report, which was not admitted into evidence at trial, stated that his history "indicates alcohol substance use disorder," and he "denied any recent drug use, including alcohol or cannabis." Vasquez's appellate brief mentions this report and asserts that the examining psychologist was not called to testify at trial. He also asserts that the report indicated "the need for further testing to determine how and to what extent this affected [his] mental capacity at the time this offense occurred." However, this report does not provide any indication that trial counsel's further investigation would have uncovered any mitigating evidence.

drunken idiotic stupor, goes to the wrong house . . . looking for his daughter." During closing arguments, defense counsel urged the jury to consider whether Vasquez's intoxicated state prevented him from forming the requisite intent to commit a felony. Although the parties did not present additional evidence during the punishment phase of trial, the trial court took judicial notice of the testimony and evidence admitted during the guilt-innocence phase of trial.

"Voluntary intoxication does not constitute a defense to the commission of crime." TEX. PENAL CODE § 8.04(a). It is unclear what additional evidence concerning Vasquez's alcohol and drug use could have mitigated the jury's decision on guilt or the trial court's decision on punishment. It is possible that trial counsel decided that additional evidence of Vasquez's alcohol and drug use would have harmed his defense, and therefore we cannot conclude that counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See Hart*, 667 S.W.3d at 782. Thus, we cannot conclude on the record before us that "no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning."[4] *See id.* (quotation omitted).

We overrule Vasquez's second issue.

---

[4] Based on our conclusion that the record does not establish deficient performance, we need not consider whether the record establishes prejudice to the defense. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."); TEX. R. APP. P. 47.1.

## Legal Sufficiency of Evidence

In his third issue, Vasquez contends that the evidence was legally insufficient to support the conviction.

### A. Standard of Review

In a criminal trial, the State bears the burden to persuade the factfinder that the defendant is guilty of the charged offense beyond a reasonable doubt. *Baltimore v. State*, 689 S.W.3d 331, 340 (Tex. Crim. App. 2024). Evidence is legally sufficient to support a conviction if a rational trier of fact could have found that the defendant committed each element of the offense beyond a reasonable doubt. *Id.*; *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

Reviewing courts measure the sufficiency of the evidence by comparing the trial evidence to the essential elements of the charged offense as defined by a hypothetically correct jury charge. *Baltimore*, 689 S.W.3d at 341. A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was charged. *Id.* The law authorized by the indictment consists of the

20

statutory elements of the offense as modified by the allegations in the indictment. *Id.*

We consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences from it, a rational juror could have found that the State has proven the essential elements of the charged offense beyond a reasonable doubt. *Id.* The jury has "full responsibility" to fairly resolve conflicts in witness testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* The jury may believe or disbelieve some or all of a witness's testimony. *Vernon v. State*, 571 S.W.3d 814, 820 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). A reviewing court considers the cumulative force of all the evidence—both direct and circumstantial—to determine whether sufficient evidence exists to establish each element of the offense. *Baltimore*, 689 S.W.3d at 341; *Vernon*, 571 S.W.3d at 819.

## B. Analysis

Vasquez argues that the evidence was legally insufficient to support the conviction for second-degree burglary of a habitation.[5] He acknowledges that both Paz and Morales testified that he broke the glass on their back door and went inside

---

[5] Vasquez argues on appeal that the evidence was legally insufficient to support both the charged offense of first-degree burglary and the lesser-included second-degree offense of burglary for which he was convicted. Because the jury found that Vasquez was guilty only of second-degree burglary, we do not consider whether the evidence would have been sufficient to sustain a first-degree burglary conviction.

their house, but he points to his own testimony that he did not enter the house. He further argues that only Paz testified he had a gun and threatened Paz with the gun. Morales denied seeing a gun or hearing any threats with the gun, and Vasquez denied that he had a gun during the incident. From these inconsistencies, Vasquez concludes that "[i]t stands to reason that if [Paz] is either lying or simply mistaken about Mr. Vasquez having a gun and threatening to kill him, a rational trier of fact would also be inclined to question the reliability and credibility of [Paz's] testimony regarding whether [Vasquez] actually entered his home after breaking a window." Vasquez thus contends that a rational factfinder could have found him guilty only of the misdemeanor offense of criminal trespass.

The State responds that the jury reasonably could have believed the testimony of Paz and Morales and disbelieved Vasquez's testimony. We agree with the State.

Vasquez was indicted for first-degree burglary of a habitation based on his entry into Paz's house and commission or attempted commission of the felony offense of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE § 30.02(a), (d). The jury charge contained instructions on this primary offense and two lesser-included offenses: second-degree burglary of a habitation based on Vasquez's commission or attempted commission of assault and misdemeanor criminal trespass. The jury convicted Vasquez of second-degree burglary.

22

A person commits the offense of burglary if, without the effective consent of the owner, the person enters a habitation or building and commits or attempts to commit a felony, theft, or an assault. *Id.* § 30.02(a)(3); *accord Morgan v. State*, 501 S.W.3d 84, 90 (Tex. Crim. App. 2016). The offense is a second-degree felony if committed in a habitation. TEX. PENAL CODE § 30.02(c)(2); *see id.* § 30.01(1)(A). A person commits the offense of assault if the person intentionally or knowingly threatens another with imminent bodily injury. *Id.* § 22.01(a)(2).

Vasquez does not dispute that he did not have the effective consent of Paz or Morales to enter their house.[6] *See id.* § 30.02(a). Instead, Vasquez challenges the second and third elements of a burglary offense: whether he entered a habitation and whether he committed or attempted to commit an assault.

The Penal Code defines "enter" as "to intrude: (1) any part of the body; or (2) any physical object connected with the body." *Id.* § 30.02(b). A person charged with the offense of burglary "is guilty of that offense the moment that he crosses the threshold of a habitation without consent and with the intent to commit the underlying felony." *Morgan*, 501 S.W.3d at 90 (quoting *Langs v. State*, 183 S.W.3d 680, 686 (Tex. Crim. App. 2006)); *see Beasley v. State*, 426 S.W.3d 140, 146 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("The harm from a burglary results from

---

[6]    Morales testified at trial that she did not give anybody permission to enter her house on the night of the offense.

the entry itself, and the offense is complete once the unlawful entry is made without regard to whether the intended theft or felony is also completed."). As the State points out, "entry" is established for purposes of a burglary offense "when the plane of the opening of the house is broken, and [entry] may be accomplished by placing a foot inside a door frame, by cutting window or door screens, or by breaking a door lock or frame." *Martinez v. State*, 304 S.W.3d 642, 660 (Tex. App.—Amarillo 2010, pet. ref'd) (collecting cases).

Here, Paz testified that he saw Vasquez swing a guitar like a baseball bat at the glass in Paz's back door, and Vasquez eventually shattered the glass.[7] Paz also testified that Vasquez "was inside" the house standing "in front of [Paz]." Morales also testified that she saw Vasquez break the glass and step inside the house. The trial court admitted into evidence photographs depicting the back door with shattered glass and a hole large enough for a person to walk through. Vasquez, however, testified that he stayed on the back patio and did not go inside the house.

Whether Vasquez entered the house therefore boiled down to whether the jury believed Paz and Morales or whether the jury believed Vasquez. The jury was the sole judge of the witnesses' credibility and the weight to give their testimony, and it

---

[7] Neither party relies on Vasquez striking the glass with the guitar or argues that the guitar broke "the plane of the opening of the house" to establish entry into the home for purposes of the burglary offense. *Martinez v. State*, 304 S.W.3d 642, 660 (Tex. App.—Amarillo 2010, pet. ref'd); *see* TEX. PENAL CODE § 30.02(b)(2) (defining "enter" to include "to intrude . . . any physical object connected with the body").

reasonably could have believed Paz's and Morales's testimony that Vasquez entered their house and disbelieved Vasquez's contrary testimony. *See Baltimore*, 689 S.W.3d at 341–42; *Vernon*, 571 S.W.3d at 820. In determining whether the evidence was legally sufficient to support a conviction, we consider the evidence in the light most favorable to the verdict. *See Baltimore*, 689 S.W.3d at 341. The jury found Vasquez guilty of second-degree burglary, and thus the jury found that Vasquez entered the house. *See* TEX. PENAL CODE § 30.02(a)(3), (c)(2). Paz's and Morales's testimony is legally sufficient to support the jury's finding that Vasquez "crosse[d] the threshold" of Paz's and Morales's home, thereby entering their habitation. *See Morgan*, 501 S.W.3d at 90 (quoting *Langs*, 183 S.W.3d at 686).

Next, Vasquez argues that the evidence was legally insufficient to show he committed or attempted to commit an assault during the burglary of a habitation. *See* TEX. PENAL CODE § 30.02(a)(3). Vasquez argues that only Paz testified Vasquez had a gun and threatened Paz with the gun. Morales denied seeing a gun or hearing any threats with the gun, and Vasquez testified that he did not have a gun or make any threats. We disagree with this characterization of Morales's testimony.

At trial, Paz testified that when Vasquez entered the home, he had a gun that he "was pointing at [Paz]," and he threatened to kill Paz. Paz described the gun as black and small. Morales denied seeing a gun because she could not see Vasquez well. In particular, she could not see his hands, which were in front of him and out

25

of her view. However, Morales testified that she heard Vasquez threaten to kill her husband.[8] Vasquez denied having a firearm or threatening anyone.

As with the conflicting testimony regarding Vasquez's entry into the house, the testimony conflicted whether Vasquez had a gun and threatened to kill Paz. But again, the jury was the sole judge of the witnesses' credibility and the weight to give their testimony. *See Baltimore*, 689 S.W.3d at 341. Disregarding the testimony about the gun, the jury reasonably could have believed Paz and Morales that Vasquez committed an assault by intentionally or knowingly threatening to kill Paz, and it could have disbelieved Vasquez's contrary testimony. *See Vernon*, 571 S.W.3d at 820; TEX. PENAL CODE § 22.01(a)(2) (stating that person commits offense of assault by intentionally or knowingly threatening another with imminent bodily injury). The jury ultimately found Vasquez guilty of second-degree burglary, which based on the charge, required the jury to find he committed an assault. Viewing the evidence in the light most favorable to the verdict, Paz's and Morales's testimony that Vasquez threatened to kill Paz is legally sufficient to support the jury's finding that Vasquez committed an assault by intentionally or knowingly threatening Paz with imminent bodily injury. *See Baltimore*, 689 S.W.3d at 341.

---

8    Morales also testified that she heard "that he was pointing a gun at him [Paz]." This testimony is not clear whether Morales heard Vasquez say that he was pointing a gun at Paz or whether she heard someone else, perhaps Paz, say that Vasquez was pointing a gun at him.

To the extent Vasquez contends that the jury could have believed Paz or Morales was lying or mistaken about Vasquez having a gun and threatening Paz, and therefore the jury "would also be inclined to question the reliability and credibility" of Paz's and Morales's testimony that Vasquez entered the house, we disagree.

The jury did not convict Vasquez of first-degree burglary, which as charged required the jury to find that he committed or attempted to commit aggravated assault with a deadly weapon. *See* TEX. PENAL CODE § 30.02(a), (d)(2). But the judgment reflects that the jury did not make a deadly weapon finding, which indicates that the jury did not believe he had a gun during the commission of the offense. The jury did convict Vasquez of second-degree burglary, however, which means that it did believe he assaulted Paz by threatening him. *See id.* §§ 30.02(a)(3), 22.01(a)(2). The jury is the sole arbiter of witness testimony and credibility, and it alone may resolve conflicts in the witness testimony, including believing or disbelieving all or part of a witness's testimony. *See Baltimore*, 689 S.W.3d at 341; *Vernon*, 571 S.W.3d at 820. Thus, the jury could have disbelieved the testimony that Vasquez used a gun while believing the testimony that he entered the house and threatened to kill Paz. We therefore hold that the evidence is legally sufficient to support the conviction for second-degree burglary of a habitation by committing or attempting to commit assault.

We overrule Vasquez's third issue.

## Conclusion

We affirm the judgment of conviction.


David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).